Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS AND WOODS LAW**
5055 North 12th Street, Suite 100
Phoenix, Arizona 85014
Telephone 833.383.4448
docket@millsandwoods.com
rmills@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dan Peterson, as Trustee of the Dan D. Peterson Living Trust Dated April 2, 2009, a trust formed under the laws of Arizona,<br><br>Plaintiff,<br><br>v.<br><br>Fyve LLC, a Delaware Limited Liability Company,<br><br>Defendant. | Case No:<br><br>**VERIFIED COMPLAINT**<br><br>**TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTION AND DECLARATORY JUDGMENT** |

## PARTIES, JURISDICTION AND VENUE

1. Dan Peterson ("Dan") is an adult individual residing in Maricopa County, Arizona.

2. Dan is the sole trustee of the Dan D. Peterson Living Trust dated April 2, 2009 (hereinafter "the Trust").

3. The Trust owns 100% of the membership interest of Dan Peterson Property Management, LLC, an Arizona limited liability company (hereinafter "the Company").

4. The Company is engaged in the business of HOA management.

5. Fyve LLC ("Fyve") is a Delaware limited liability company, and is the successor in interest to OnPoint Acquisitions, LLC, a Delaware limited liability company ("OnPoint").

6. This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different States.

7. This Court has personal jurisdiction over the defendant because Fyve conducts business in Arizona and the causes of action alleged herein arose from Fyve's activities in Arizona.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of property that is the subject of the action is situated, in this District.

**GENERAL ALLEGATIONS**

9. On October 31, 2019, Dan, as trustee of the Trust, entered into a contract entitled "Membership Interest Purchase Agreement" (hereinafter the "Purchase Agreement") with OnPoint. Exhibit A attached hereto is an accurate copy of the Purchase Agreement.

10. Pursuant to the terms of the Purchase Agreement the Trust Agreed to sell to OnPoint all of the Trust's membership interest in the Company for $1.8 million subject to the terms and conditions of the Purchase Agreement and the specified documents that were

to be executed and delivered at the time of the closing of the transaction (the "Transaction Documents").

11. Among the Transaction Documents was a "Promissory Note" and a "Pledge and Security Agreement."

12. The Trust agreed to finance $800,000 of the purchase price pursuant to the terms of the Promissory Note and the Pledge and Security Agreement.

13. OnPoint executed the Promissory Note and the Pledge and Security Agreement and delivered the signed copies to the Trust at the closing. Exhibit B attached hereto is an accurate copy of the Pledge and Security Agreement. Exhibit C attached hereto is an accurate copy of the Promissory Note.

14. Pursuant to the terms of the Pledge and Security Agreement, OnPoint created and assigned to the Trust all of OnPoint's ownership interest in the Company in order to secure OnPoint's performance of its obligations under the Purchase Agreement and to secure OnPoint's payment of its obligations to the Trust under the Promissory Note. Pledge and Security Agreement, Paragraph 1.

15. Pursuant to the terms of the Pledge and Security Agreement, OnPoint executed and delivered to the Trust an "Assignment of LLC Interests" wherein OnPoint assigned to the Trust all of OnPoint's interests in the Company. Exhibit D attached hereto is an accurate copy of the "Assignment of LLC Interests."

16. Pursuant to the terms of the Pledge and Security Agreement OnPoint retained "all incidents of beneficial ownership of such Ownership Interests including, but not limited to, the right to vote the Ownership Interests and the right to receive distributions *for so long as an Event of Default (as defined in Section 6) has not occurred* and is continuing without waiver or cure." Pledge and Security Agreement, Section 3. Emphasis added.

17. An "Event of Default" as defined by the Pledge and Security Agreement includes any failure by OnPoint to pay amounts due under the Promissory Note. Pledge and Security Agreement, Section 6.

18. The Pledge and Security Agreement provides that among the Trust's remedies for a Default on the part of OnPoint are the rights and remedies provided by the Delaware Uniform Commercial Code "*as well as all rights and remedies at law or in equity provided b any other applicable law.*" Emphasis added. Exhibit B, Section 7.

19. At the request of Fyve, the Trust on two occasions agreed to modify and amend the terms of the Promissory Note in order to allow Fyve more time to make its required payments. Exhibit E, attached hereto, is an accurate copy of the "Loan Modification Agreement," dated November 1, 2022. Exhibit F attached hereto is an accurate copy of the "Second Loan Modification Agreement " dated April 30, 2023.

20. Fyve failed to make a scheduled payment on the Promissory Note due by July 31, 2023.

21. By letter dated August 7, 2023, the Trust gave formal notice that Fyve was in default under the Promissory Note because "all principal and interest was not paid when due on or before July 31, 2023. In addition, the most recent interest payment was not made either." Exhibit G, attached hereto, which is an accurate copy of correspondence dated August 7, 2023 from the Trust's Counsel to the principals of Fyve.

22. In good faith, Dan then offered Fyve terms for a third extension of the loan. See Exhibit H, attached hereto, which is an accurate copy of a proposed 'Third Loan Modification Agreement." The proposed terms called for a $250,000 payment of the principal amount of the loan. Exhibit H, Section 3 (a).

23. When Fyve refused to agree to pay any amount of principal, Dan offered to reduce the principal payment to $150,000. Exhibit I, attached hereto, which is an accurate

copy of a proposed "Third Loan Modification Agreement;" Exhibit J, attached hereto, which is an accurate copy of an email from the Trust's counsel to the principals of Fyve.

24. Fyve flatly rejected the Trust's proposed terms and informed Dan that only Fyve' own terms would be acceptable. See Exhibit K, attached hereto, is an accurate copy of an email from Fyve principal John Ferron to Jace McKeighan dated August 16, 2023. In other words, although it was already in default, Fyve demanded the right to dictate the terms of any modification/extension of the loan. See Exhibit L, attached hereto, which is an accurate copy of an August 16, 2023 email from Jace McKeighan to the principals of Fyve.

25. In an email dated August 16, 2023 from Fyve principal John Ferron to Jace McKeighan, Fyve informed the Trust: "We are not entering into a third loan modification that requires a condition precedent of a $250,000 principal reduction. The shareholders continue to fund the overall operations of the business to bridge FYVE towards sale or an equity infusion($500K internal round coming in by 8/25) and do not have the liquidity to also make this payment." Exhibit L.

26. The Trust has received no further payments from Fyve.

27. Fyve has admitted in writing that it is in default under the Promissory Note. See Exhibit M, attached hereto, which is an accurate copy of an August 3, 2023 email from Fyve principal John Ferron to Dan; Exhibit N, attached hereto, which is an accurate copy of an email Fyve sent to its employees on September 4, 2023.

28. In the August 7, 2023 letter, Dan requested Fyve's cooperation in the orderly transition of the operation of the Company back to the Trust. Dan demanded that Fyve turn over "all assets, keys, passwords, security codes, account access information, and any other information necessary for the operation of the business." Exhibit G.

5

29. Fyve has forfeited and lost all beneficial interest in the Company pursuant to Section 3 of the Pledge and Security Agreement. Exhibit B, Section 3.

30. The Trust owns 100% of the Company.

31. Fyve no longer has any ownership interest in the Company, and no right to interfere with the Trust's ownership interest.

32. As owner, the Trust is entitled to control the Company.

33. Fyve has repeatedly told Dan that Fyve is agreeable to Dan and the Trust taking the Company back. See Exhibit O, attached hereto, which is an accurate copy of an email dated August 30, 2023 from Fyve principal John Ferron to Jace McKeighan; Exhibit P, which is an accurate copy of an email dated September 1, 2023 from John Ferron to Dan and Jace McKeighan. But when Dan attempted to do so, Fyve has resisted and has directly interfered with the Trust's ownership interest in the Company.

34. On or about September 1, 2023, Fyve changed the locks at the Company's offices in Scottsdale in order to deny Dan access.

35. Fyve has actually called the Scottsdale Police and accused Dan of trespassing for attempting to access the Company's offices.

36. Fyve has blocked Dan's access to his Company email account, to the Company's QuickBooks Online accounting system, to Domain Registrar Login Information (Go Daddy, Network Solutions), Office 365 software and other items necessary to the operation of the Company's business.

37. On or about September 1, 2023, Dan was able to gain access to the Company's bank account at Alerus Bank. Dan presented documents cited herein, including the Pledge and Assignment Agreement, the Promissory Note, the Second Loan Modification Agreement, the Assignment of LLC Interests, and Fyve's admissions that it

MILLS AND WOODS LAW
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4557

was in default to bank personnel. The Bank and its attorneys agreed that the Trust was the 100% owner of the Company and gave Dan access to the account.

38. Since September 1, 2023, Fyve has attempted to block Dan's access to the bank account by telling bank staff that Dan's access is unlawful.

39. By email dated September 6, 2023, the Company's bank, Alerus, informed Dan and Fyve principals John Goodman and John Ferron that Alerus had frozen the Company's bank accounts. Alerus stated:

> "We have received conflicting instructions from the parties regarding the authorized signers on the Dan Peterson Property Management, LLC accounts Due to this bona fide dispute and pursuant to the terms of the applicable agreement governing the accounts, Alerus is placing a hard hold on the accounts until the parties provide clear joint instructions or a court order regarding ownership of and authority to act on the accounts."

Exhibit R, attached hereto, is an accurate copy of an email dated September 6, 2023 to Dan, John Goodman and John Ferron.

40. The freezing of the Company's bank accounts is causing immediate and irreparable harm to the Company. The Company cannot now pay employees, vendors or any other bill.

41. The Company may well lose its employees and vendors.

42. Fyve has disparaged and defamed Dan to the Company's employees, telling them that Dan's efforts to protect his ownership interest were tortious and criminal. See Exhibit N.

43. Fyve continues to attempt to turn the Company's employees against Dan, which is causing immediate and irreparable harm to the Trust as owner of the Company.

44. Also on September 1, 2023, Fyve purported to fire two of the Company's key employees, one of whom is Dan's wife, apparently in retaliation for Dan's efforts to protect his ownership interests in the Company. See Exhibit Q, attached hereto, which is

MILLS AND WOODS LAW
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4557

an accurate copy of an email from Fyve to Michelle Peterson, Dan's wife, dated September 1, 2023.

45. Fyve wrongfully insists that Dan has no right to take control of the Company or to contact any of the Company's employees.

46. Fyve's actions are doing irreparable harm to the Company by creating confusion among the Company's customers as to the ownership and control of the Company. There are numerous other HOA management businesses to which the Company's customers can go if they are confused about who is operating the Company. The company's reputation is being severely damaged by Fyve's refusal to relinquish control to the Trust.

47. Fyve's actions are doing irreparable harm to the Company by creating confusion among the Company's employees, who may resign in the midst of the turmoil caused by Fyve's improper conduct.

48. Fyve's actions are doing irreparable harm to the Trust's ownership interests in the Company by precluding Dan from taking necessary action to protect the Company's assets and to ensure its continued operation.

49. Fyve has indicated in multiple communications that it is attempting to sell the Company to a third party. See, e.g., Exhibit M. Because Fyve does not own the Company, Fyve is potentially exposing the Company and the Trust to liability or at least to involvement in extensive litigation over ownership.

**COUNT I**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTION**

50. Plaintiffs restate and reallege all previous paragraphs as if fully set forth herein.

51. There is a strong likelihood that Plaintiff will succeed on the merits at trial. Fyve admits that it is in default and that Plaintiff can take the Company back. Pursuant to the Pledge and Security Agreement, the Trust is 100% owner of the Company and has the right to control its operations.

52. There is an immediate risk of severe and irreparable harm to the Company and Plaintiff if injunctive relief is not granted. AS of September 6, 2023, the Company's bank accounts have been frozen. The Company may lose customers, employees and vendors. Fyve has blocked Dan from even accessing the Company's premises. Fyve continues to disparage and defame Dan to the Company's employees and may be doing the same to the Company's customers. The Company's assets are at extreme risk. Fyve is in default and knows it must give the Company back to the Trust. Yet Fyve continues to impede the Trust's ability to take action to protect its assets.

53. The balance of hardships favors Plaintiff in granting injunctive relief. Fyve now refuses to even make interest payments under the Promissory Note (Exhibit M, which is a true and accurate copy of an email dated August 3, 2023) while at the same time continuing to exercise control over the Company and claiming a "right" to do so. There is no hardship to Fyve, which has stopped making payments to Plaintiff altogether. On the other hand, Plaintiff will suffer great hardship if relief is not granted. Plaintiff will be unable to take action to protect its collateral securing the Trust's $800,000 loan to Fyve. Without injunctive relief, Plaintiff will be left without the ability to prevent Fyve's waste, destruction or conversion of Company assets.

54. Equity and public policy favor injunctive relief. Fyve has no ownership interest in the Company. Fyve owes the Trust over $800,000, but has stopped making any payments as it is obligated to do under the Promissory Note. Yet Fyve continues to exercise dominion and control over the Company as if it is sole owner, even to the exclusion of the

MILLS AND WOODS LAW
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4557

Trust. Fyve's conduct has placed the Company at extreme risk, even having its bank accounts frozen. This is unfair and inequitable to the Trust.

55. Plaintiff is entitled to a temporary restraining order and a preliminary and permanent injunction enjoining Fyve from denying Dan and the trust access to the Company's:

a). business premise;

b). bank accounts;

c). books, accounting financial and tax records;

d). PIN's, access codes, passwords and any other information necessary to the operation of the Company;

e). documents and electronically stored information which constitute the property, including but not limited to intellectual property, trade secrets, and confidential information belonging to the Company.

56. Plaintiff is further entitled to a temporary restraining order and a preliminary and permanent injunction enjoining Fyve from: a) damaging converting or destroying any property, including but not limited to intellectual property, trade secrets and confidential information belonging to the Company; b) disparaging and defaming Dan to the Company's employees, customers and vendors; c) interfering with or impeding Dan's access to the Company's employees, customers and vendors.

57. Plaintiff is entitled to a temporary restraining order and preliminary injunction requiring Fyve to immediately add Dan as an authorized account user for each of the following vendors:

a) Strong Room/ Avidxchange

b) ADP

c) Homewise

      d)    CINC systems

      e)    3cx phone system

58.    Plaintiff is entitled to a temporary restraining order and a preliminary and permanent injunction requiring that Fyve immediately deliver to Dan and the Trust:

      a).    all keys to the Company's premises;

      b).    bank account numbers and access information, including but not limited to passwords;

      c).    PIN's, access codes, passwords and any other information necessary to the operation of the Company.

      d).    GoDaddy logins and passwords for all hosting, email access, domain control, and DNS access.

59.    Plaintiff is entitled to a temporary restraining order and a preliminary injunction finding that Dan Peterson, as Trustee of the Trust is the proper party for purposes of control of the Company's bank accounts and that Defendants are enjoined from accessing the Company's bank accounts.

## COUNT II
## DECLARATORY JUDGMENT

60.    Plaintiffs restate and reallege all previous paragraphs as if fully set forth herein.

61.    Pursuant to 28 U.S.C. § 2201 (a) "In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

62.    There exists within this Court's jurisdiction an actual controversy as to the ownership and right to control the Company.

63. As alleged herein, Fyve has asserted and continues to assert some ownership interest in the Company and the right to control it and its operations.

64. The Trust is entitled to a Declaratory Judgment that it is the sole owner of the Company and has the right to control it and its operations.

**WHEREFOR** Plaintiff prays for the following relief:

a) For a Temporary Restraining Order and Preliminary and Permanent Injunction in the form of the Proposed Temporary Restraining Order and Preliminary Injunction filed simultaneously with this Verified Complaint.

b) For a Declaratory Judgment that the Trust is the sole owner of the Company and has the right to control it and its operations.

c) For such other and further relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED** this 7th day of September, 2023.

**MILLS AND WOODS LAW, PLLC**

By  */s/ Sean A. Woods*
Robert T. Mills
Sean A. Woods
5055 North 12th Street, Suite 100
Phoenix, Arizona 85014
*Attorneys for Plaintiff*

**ORIGINAL** filed on this 7th day of September 2023 via ECF

   */s/ Ben Dangerfield*

## **VERIFICATION**

I, Dan Peterson, Plaintiff in this action, hereby declare that the allegations contained in the foregoing Verified Complaint are true and correct to the best of my knowledge and belief.

**EXECUTED** on <u>Sep 6, 2023</u>.


Dan Peterson (Sep 6, 2023 19:25 PDT)
Dan Peterson

13