# EXHIBIT B

Exhibit B

**PLEDGE AND SECURITY AGREEMENT**

THIS PLEDGE AND SECURITY AGREEMENT (as the same may from time to time be amended, restated or otherwise modified, this "Agreement") is made effective as of the 31st day of October, 2019, by **OnPoint Acquisitions, LLC**, a Delaware limited liability company (together with its successors and assigns, "Pledgor"), in favor of **Dan Peterson, as Trustee of the Dan D. Peterson Living Trust dated April 2, 2009**, a revocable trust formed under the laws of the State of Arizona ("Pledgee"), for the benefit of Pledgee, as hereinafter defined.

**Recitals:**

A.      Pledgor and Pledgee have entered into a Membership Interest Purchase Agreement dated effective as of October 31, 2019 (the "Purchase Agreement"), pursuant to which Pledgor purchased all of Pledgee's issued and outstanding membership interests in Dan Peterson Property Management, LLC, an Arizona limited liability Company (the "Company") described on **Exhibit A** hereto (the "Ownership Interests");

B.      Pursuant to Section 2.04 of the Purchase Agreement, Pledgor executed a promissory note in favor of Pledgee (the "Note");

C.      A condition of the Purchase Agreement is that the obligations of Pledgor to the Pledgee under the Promissory Note are secured by a pledge of the Ownership Interests, as set forth in the Purchase Agreement; and

D.      As security for the obligations of Pledgor to Pledgee under the Promissory Note, Pledgor has agreed to enter into this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants contained in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Pledgor and Pledgee agree as follows:

1.      Creation of Security Interest in Ownership Interests.  Pledgor hereby assigns and agrees to deliver to and deposit immediately with Pledgee and hereby pledges, mortgages and grants to Pledgee a security interest in and to the Ownership Interests, to secure performance by Pledgor of Pledgor's obligations under this Agreement and to secure the payment of the Pledgor's obligation to Pledgee under the Note.

2.      Representations and Warranties.  Pledgor hereby represents and warrants to Pledgee as follows:

a.      Pledgor is the record and beneficial owner of the Ownership Interests and has good and marketable title to such Ownership Interests free and clear of all liens, charges, encumbrances or other adverse claims of any kind, nature or description.

b.      Pledgor has the full and absolute right and authority to enter into and perform under this Agreement and to consummate the transactions contemplated hereby and neither the execution and delivery of this Agreement by Pledgor, nor the performance by Pledgor of her obligations hereunder, violate or constitute a breach of any of the terms or provisions of, or constitute a default or accelerate any obligations of Pledgor under any instrument, agreement or other document to which Pledgor is a party or by which Pledgor is bound.

c.      Pledgor shall at all times uses its best efforts to promote the interests of the Company and its business, and shall operate the business in the ordinary course as its exclusive property management company in the State of Arizona.

d.      Pledgor will pay all costs reasonably necessary to preserve and enforce this Agreement.

e.      Pledgor shall, no more frequently than monthly, furnish Pledgee with any information concerning the Ownership Interests reasonably requested by Pledgee, including but not limited to financial statements, bank and account statements, and other similar information concerning the performance and/or financial condition of the Company.

f.      Pledgor shall conduct any and all business in the State of Arizona exclusively through the Company.

g.      Pledgor shall not without the Pledgee's prior written consent, which shall not be unreasonably withheld, transfer, assign, or in any way convey any Company account, client or contract.

h.      Pledgor shall not without the Pledgee's prior written consent, which shall not be unreasonably withheld, cause the Company to borrow funds, encumber or lien the assets of the Company, or allow the assets of the Company to become an accession to other goods.

i.      Pledgor shall not without the Pledgee's prior written consent, which shall not be unreasonably withheld, sell, lease or otherwise transfer the assets of the Company except in the ordinary course of business.

Notwithstanding any of the foregoing, Pledgor may transfer and/or assign the assets, equity and/or business of the Company to Pledgor or an affiliate or subsidiary of Pledgor (the "Transferee"), in which case Pledgee shall be granted a pledge of equal value and in form and substance substantially similar to this Agreement in the equity of the Transferee. Such a transfer shall not be deemed a breach of Pledgor's obligations, representations or warranties or an Event of Default hereunder.

3.      Delivery and Holding of Ownership Interests. Simultaneously with execution of this Agreement, Pledgor shall deliver to and deposit with the Pledgee certificates evidencing any of the Ownership Interests, endorsed in blank by Pledgor or with fully executed assignments of membership interests in the form attached hereto as **Exhibit B**, in the case of uncertificated membership interests, in all respects in good and sufficient form under applicable law for delivery and transfer; provided, however, that Pledgor shall retain all incidents of beneficial ownership of such Ownership Interests including, but not limited to, the right to vote the Ownership Interests and the right to receive distributions for so long as an Event of Default (as defined in Section 6) has not occurred and is not continuing without waiver or cure.

4.      Transfer of Ownership Interests. Pledgor will not sell, assign, transfer, or dispose of the Ownership Interests, or any part thereof, without the prior written consent of Pledgee, which consent may not be unreasonably withheld.

5.      Covenants of Pledgor. During the term of this Agreement, Pledgor shall, upon Pledgee's request, take any action reasonably deemed necessary by Pledgee to establish, perfect, determine the priority of, continue or enforce Pledgee's interest in the Ownership Interests or rights under this Agreement.

6.      Events of Default. The happening of any of the following events or conditions shall constitute a default ("Event of Default") under this Agreement:

49
PETERSON_000131

    a.   any failure by Pledgor to pay amounts due to Pledgee under the Note;

    b.   any failure by Pledgor to perform or comply with any representation, warranty, covenant or agreement contained herein or in the Note;

    c.   The occurrence of a sale or transfer of any or all of the Ownership Interests not in compliance with this Agreement; or

    d.   Any failure by Pledgor to actively operate the Company's property management business for a period of (a) ten (10) consecutive days or (b) twenty (20) days within any given calendar month.

7. <u>Remedies</u>. Upon the occurrence of any Event of Default hereunder Pledgee shall have all the rights and remedies of a secured party under the Delaware Uniform Commercial Code, as well as all rights and remedies at law or in equity provided by any other applicable law. In addition, Pledgee shall have, upon the occurrence of any Event of Default hereunder, and to the extent permitted under the Delaware Uniform Commercial Code, the right to make a public or private sale of the Ownership Interests at which Pledgee may bid, and the right to apply any proceeds of any sale of the Ownership Interests to the satisfaction of the obligations hereby secured in such order, amounts and manner which Pledgee, in its sole discretion, may determine. All rights, remedies or powers conferred upon Pledgee herein or by law shall be cumulative. Pledgor shall be entitled to any proceeds of any sale in excess of the amount owed to Pledgee at the time of default. Pledgor will be liable for all reasonable costs or expenses (including reasonable attorneys' fees and expenses) incurred in connection with the enforcement of this Agreement.

8. <u>No Waivers</u>. No delay, omission, or forbearance by Pledgee in the exercise of any right, power or remedy conferred upon it herein or by law, shall be a waiver of any future right, power or remedy, or a waiver or excuse of an event giving rise to the same. Pledgee's election to waive an Event of Default does not constitute a future waiver of subsequent default on any obligation of Pledgor.

9. <u>Release of Ownership Interests</u>. Pledgee agrees that, upon the payment of all amounts due under the Note and the performance of all of the Pledgor's obligations herein, Pledgee will release its security interest hereunder in the Ownership Interests and deliver the Ownership Interests to Pledgor.

10. <u>Notices</u>. All notices provided or permitted by this Agreement shall be in writing. All notices shall be deemed given when hand delivered or mailed by certified or registered mail, postage prepaid.

11. <u>Entire Agreement</u>. This Agreement and the Note and any agreement or document delivered in connection therewith, constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter.

12. <u>Successor and Assigns</u>. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. No party may assign any of its rights or obligations hereunder without the prior written consent of the other parties hereto, which consent shall not be unreasonably withheld or delayed.

13. <u>Headings</u>. The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

14. <u>Amendment and Modification; Waiver</u>. This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each party hereto. Except as otherwise set forth in this Agreement, no failure to exercise, or delay in exercising, any rights, remedy, power or privilege arising from this Agreement shall operate or be construed as a future waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

15. <u>Severability</u>. If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal or unenforceable, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

16. <u>Governing Law; Submission to Jurisdiction</u>. This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction). Any legal suit, action or proceeding arising out of or based upon this Agreement or the transactions contemplated hereby may be instituted in the federal courts of the United States or the courts of the State of Delaware, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding. Service of process, summons, notice or other document by mail to such party's address set forth herein shall be effective service of process for any suit, action or other proceeding brought in any such court. The parties irrevocably and unconditionally waive any objection to the laying of venue of any suit, action or any proceeding in such courts and irrevocably waive and agree not to plead or claim in any such court that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.

17. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

[signature page follows]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

PLEDGOR

OnPoint Acquisitions, LLC

By: _____

Chris Jurasek, President


PLEDGEE:

By: _____

Dan Peterson, as Trustee of
the Dan D. Peterson Living Trust
dated April 2, 2009

*Signature Page to Pledge and Security Agreement*

PETERSON_000134

**Exhibit A**

Ownership Interests

<u>Company</u>                                                      <u>Membership Interests</u>

Dan Peterson Property Management, LLC                              100%