Randy Nussbaum (SBN 006417)
Nussbaum@SacksTierney.com
Clifford J. Roth (SBN 006442)
Roth@SacksTierney.com
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone:  480.425.2600

Attorneys for Defendant Fyve, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dan Peterson, as Trustee of the Dan D. Peterson Living Trust dated April 2, 2009, a trust formed under the laws of Arizona,<br><br>       Plaintiff,<br><br>v.<br><br>Fyve, Inc, a Delaware corporation,<br><br>       Defendant. | No.  2:23-CV-1874-JJT<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION**<br><br>(Assigned to Hon. John J. Tuchi)<br><br>(Evidentiary Hearing Scheduled for October 6, 2023, at 9:30 a.m.) |

Defendant Fyve, Inc. ("Fyve")[1] respectfully submits this Response in opposition to the Motion for Temporary Restraining Order and for Preliminary Injunction ("Lender's Motion for Injunctive Relief" (Doc. 2, filed 9/7/23)), filed by Plaintiff Dan Peterson, as Trustee of the Dan D. Peterson Living Trust dated April 2, 2009 ("Lender").  This Response is supported by (1) Defendant's Response to Plaintiff's Request for Temporary Restraining Order Without an Opportunity to be Heard (Doc. 7, filed 9/8/23), and (2) Defendant's Cross-Motion for Temporary Restraining Order and Preliminary Injunction ("Fyve's Cross-Motion" (Doc. 9, filed 9/12/23)), which are incorporated herein by this

---

[1]     Plaintiff incorrectly named Fyve, LLC as the Defendant.  The correct name of the entity, a Delaware corporation, is Fyve, Inc.

3652181.v1

reference.

The parties' Cross-Motions for Injunctive Relief can be resolved as a matter of law by examining the rights given to Lender under the loan documents, DPPM's LLC/Operating Agreements, and the LLC statutes of Delaware and Arizona. As discussed in detail in Fyve's Cross-Motion and as summarized below, the loan documents and purchase agreement grant Lender a security interest in collateral, not the right to seize operational control over DPPM. Nothing in the LLC and operating agreements of DPPM give Lender the right to full control over DPPM without first becoming a member. Similarly, the LLC statutes grant Lender only the economic rights of an assignee, not the control rights of an owner.

Unless and until it purchases the collateral at a proper UCC sale and is made the member of DPPM, Lender simply does not have the right to control the business and affairs of DPPM and is not entitled to an injunction giving it such control. Lender's Motion for Injunctive Relief should be denied.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.    Background**

The factual background was set forth in Fyve's Cross-Motion (2:25-4:6), and therefore need only be briefly summarized here. On 10/31/19, Fyve's predecessor purchased Dan Peterson Property Management, LLC ("DPPM") from Lender for $1.8 million, with a cash payment of approximately $1 million and a secured Promissory Note for $800,000. After Fyve failed to timely tender a payment on 7/31/23, Lender sent a notice of default, and then on 8/31/23 announced his intent to seize control over DPPM at the end of business that day.

On 9/1/23, Lender exercised self-help in an attempt to take control of DPPM's business, including without limitation by changing the locks on its office, seeking to take control of its bank account at Alerus Bank (resulting in a freezing of that account), purporting to fire certain employees, and informing the other employees that Lender was now in control of the Company.

2

3652181.v1

1  Lender's Motion for Injunctive Relief is based on the facts alleged in Lender's
2  Verified Complaint (Doc. 1, filed 9/7/23).  Some of Lender's facts are inaccurate and
3  others are no longer true because of circumstances that have changed since the Complaint
4  was filed.  Fyve will present accurate and updated facts through its witnesses and exhibits
5  at the evidentiary hearing scheduled for 10/6/23.  For present purposes, it is sufficient to
6  note that the parties are in agreement that Court intervention is necessary to prevent the
7  ongoing irreparable harm that is occurring under the current situation in which neither party
8  is in full control of DPPM.

## II. Lender Is Not Entitled to an Injunction Giving Him Full Control Over DPPM

Lender contends that he is the sole owner entitled to full control of DPPM:

> Fyve has forfeited and lost all beneficial interest in the Company pursuant to Section 3 of the Pledge and Security Agreement.  The Trust [Lender] owns 100% of the Company.  Fyve no longer has any ownership interest in the Company, and no right to interfere with the Trust's [Lender's] ownership interest.  As owner, the Trust [Lender] is entitled to control the Company.

(Lender's Motion Injunctive Relief (Doc. 2, 4:18-22)).  That contention is based on a misinterpretation of the operative loan documents and the LCC/operating agreements of DPPM, and is contrary to Delaware and Arizona law.  These issues were addressed in detail in Fyve's Cross-Motion for Injunctive Relief and thus may be briefly summarized here.

### A. The Loan Documents Only Grant Lender the Rights of a Secured Lender and Pledgee

The loan and sale documents from the sale of DPPM to Fyve's predecessor on 10/31/19 do not grant Lender full control, but only the rights of a secured lender and pledgee for at least the following reasons.  (*See* Cross-Motion, 8:7-10:25)

1. The stated purpose of the Pledge and Security Agreement (which apparently was not signed by Lender and therefore may not be an effective and enforceable agreement) was to create a security interest in the Ownership Interests and the words "secure," "secured" or "security" appear no less than 12 times in the document.  (*Id.*,

3

3652181.v1

13:14-15).

2.     The remedies granted to Lender are limited to those in paragraph 7 of the Pledge and Security Agreement, and do not include the remedy of unilaterally seizing control of DPPM.

3.     To the extent that Lender relies on one phrase in paragraph 3 of the Pledge and Security Agreement, that phrase does not affirmatively grant any rights to Lender, and such rights cannot be created through negative implication.

4.     The Assignment document similarly does not grant Lender control rights over DPPM. Instead, the language quoted at page 10, lines 7-14 of the Cross-Motion confirms that only economic rights were assigned upon an event of default.

5.     In the Purchase Agreement (Complaint Ex. A (Doc. 1-2), "Pledge and Security Agreement" means the agreement (attached as Ex. B thereto) "covering all of the Membership Interests in Dan Peterson Property Management, LLC acquired by Buyer hereunder *as security for the Promissory Note*." (Emphasis added). Likewise, the definition of the "Promissory Note" in the Purchase Agreement states that the Note is "secured by the Pledge and Security Agreement."

In sum, the loan and sale documents confirm that Lender was a "Pledgee" and would have "collateral" as "security" for the loan. The parties did not agree that Lender could use self-help to take control of DPPM.

**B.    DPPM's LLC/Operating Agreements Do Not Give Lender Full Control Rights**

As discussed in Fyve's Cross-Motion (7:13-8:6), the LLC agreements and operating agreements of DPPM do not grant an assignee the right to control the business and affairs of the company. Instead, they are silent on assignment rights and therefore the Delaware LLC Act fills in that gap to limit the assignment to Lender to economic rights.

/ / / /

4

3652181.v1

**C.  Under Delaware and Arizona Law, Lender Has No Rights to Control the LLC, and Is Only Entitled to the Economic Rights of an Assignee and the Right to Sell Its Collateral in a UCC Sale**

As noted in the Cross-Motion (4:17-25) the Pledge and Security Agreement is governed by Delaware law and DPPM is an Arizona limited liability company ("LLC") governed by Arizona law.  But no significant choice of law issue arises because the law in both states is substantially similar.  Thus, regardless of whether Delaware or Arizona law applies, Lender has no right to control DPPM, but rather is limited to the economic rights of an assignee and the rights of a secured creditor to sell its collateral in a UCC sale.

**1.  Lender Has No Control Rights Under Delaware Law**

As explained in detail in Fyve's Cross-Motion (4:26-7:12), the Delaware LLC Act and Delaware case law confirm that Lender does not have control rights, but only has the economic rights of an assignee and the right to sell the collateral as a secured creditor.  The assignment of a member's limited liability company interest is specifically addressed in 6 Del. C. § 18-702, which is entitled "Assignment of limited liability company interest" and quoted at length in the Cross-Motion (5:22-6:11).  That statute expressly states that an assignee "shall have no right to participate in the management of the business and affairs" of the LLC.

Delaware case law reaches the same result:  "Thus, it is clear that the default rule under the Act is that an assignment of an LLC interest, by itself, does not entitle the assignee to become a member of the LLC; rather, ***an assignee only receives the assigning member's economic interest in the LLC to the extent assigned***."  *Achaian, Inc. v. Leemon Family LLC*, 25 A.3d 800, 804-05 (emphasis added).

The *Achaian* Court further noted:  "[T]he LLC Act's default rules that draw a distinction between an LLC member's economic rights which are freely transferable and those aspects of membership, such as managerial rights, which are not freely transferable, 'recognize[ ] that it is far more tolerable to have to suffer a new passive co-investor one did not choose than to endure a new co-manager without consent.'"  *Id,* at 804, n.14 (quoting *Milford Power Co., LLC v. PDC Milford Power, LLC*, 866 A.2d 738, 760 (Del. Ch. 2004).

Under Delaware statutory and case law, despite the assignment of economic rights that became effective upon a default under the Promissory Note, no control or managerial rights were assigned to Lender.

### 2. Lender Has No Control Rights Under Arizona Law

As discussed in Fyve's Cross-Motion (11:1-12:2), Arizona LLC law is substantially similar to Delaware law on the issue of the assignment or transfer of a membership interest in an Arizona LLC such as DPPM. Under A.R.S. § 29-3502(A) and (B), the transfer of a member's transferable interest "does not entitle the transferee to . . . [p]articipate in the management or conduct of the company's activities and affairs." The transferee only has the right to receive "distributions to which the transferor would otherwise be entitled."

The Arizona LLC statutes do not support Lender's claim for an injunction giving him full control over DPPM.

### D. Fyve Did Not Consent to Lender Exercising Control Without Conditions

As discussed in the Cross-Motion (12:3-11), Fyve never consented to Lender exercising control over DPPM without conditions of an orderly transition of approximately 90 days and a full settlement, which would include a release in exchange for turning over DPPM to Lender.

### E. Dan Peterson's Role as One of Four Managers of DPPM Does Not Give Lender the Right to Control DPPM to Benefit Peterson's Trust

The status of Dan Peterson, in his individual capacity, as one of four managers of DPPM does not give the Lender (Dan Peterson in his capacity as Trustee of his Trust which is the Lender under the loan documents) the right to manage DPPM for the benefit of his Trust. (Cross-Motion, 12:12-28). Among other reasons, he is out-voted by the other three managers appointed by Fyve and he is breaching his fiduciary duties by acting to benefit himself or his Trust.

////

6

3652181.v1

### F. Fyve Did Not Cease to Be a Member of DPPM

For the reasons set forth in the Cross-Motion (13:1-18), Fyve continues to be a member of DPPM and did not forfeit its beneficial interest in DPPM as claimed by Lender.

## III. Conclusion

For all of the above reasons, Fyve respectfully requests the Court to deny Lender's Motion for Injunctive Relief and award attorneys' fees to Fyve under A.R.S. § 12-341.01 and other applicable law.

RESPECTFULLY SUBMITTED this 21st day of September, 2023.

                SACKS TIERNEY P.A.

By: */s/ Clifford J. Roth*
     Randy Nussbaum
     Clifford J. Roth
     Attorneys for Defendant Fyve, Inc.

# CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2023, I electronically transmitted the foregoing Defendant's Response to Plaintiff's Motion for Temporary Restraining Order and for Preliminary Injunction to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

>Robert T. Mills, Esq.
>Sean A. Woods, Esq.
>Mills + Woods Law, PLLC
>5055 North 12th Street, Suite 100
>Phoenix, Arizona 85014
>*Attorneys for Plaintiff*

 /s/ Debra D. Davenport

3652181.v1