Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
rmills@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Dan Peterson, as Trustee of the Dan D. Peterson Living Trust, Dated April 2, 2009, a trust formed under the laws of Arizona,<br><br>Plaintiffs<br><br>vs.<br><br>Fyve LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.: CV-23-01874-PHX-JJT<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION** |

Through counsel undersigned, pursuant to Fed. R. Civ. P. 65, Plaintiff Dan Peterson ("Dan"), as Trustee of the Dan D. Peterson Living Trust dated April 2, 2009 (the "Trust"), hereby submits the following Response to the "Cross-Motion for Temporary Restraining Order and Preliminary Injunction" ("Fyve's Motion") filed by Defendants Fyve, Inc and Fyve, LLC. ("Fyve").[1]

This Motion is supported by the following Memorandum of Points and Authorities, exhibits thereto, and by the entire record.

---

[1] In Fyve's Motion, Fyve states that Fyve, Inc. is the is the correct defendant. But Fyve, LLC is still in existence, and signed the Second Loan Modification Agreement, discussed herein. Fyve, Inc. is not a signatory on any of the applicable agreements discussed in Fyve's Motion or in this Response.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

Fyve claims the bald right to "control" Dan Peterson Property Management, LLC ("the Company"). Fyve does *not* dispute that:

a. It is in default on its obligations under the Promissory Note and the Second Loan Modification Agreement;

b. It assigned to the Trust 100% of its ownership interest in the Company;

c. It does not have any right to take profits or distributions from the Company; and

d. Dan and the Trust have the right to take control of the Company, albeit only after a lengthy transition period to be dictated by Fyve.

So Fyve asserts that it has the right to "control" the Company to the exclusion of the Trust without any corresponding obligation to pay for it. This is absurd.

None of the agreements governing the sale of the Company provides for a transition period after a default. Fyve's claimed right to immediate "control" makes no sense. Fyve has no right to any of the Company's assets. Fyve openly admits that the Trust is entitled to the profits and distributions from the Company, (Fyve's Motion at 6, 11), and that the Trust can sell the Company whenever it wants. (*Id.* at 9.) Fyve has no right to vote membership interests in the Company. There is no legitimate reason for Fyve's continued exercise of control over the Company. Fyve's interference with the efforts of Dan and the Trust to protect the Company has already caused and continues to cause irreparable harm. The Company's bank accounts remain frozen. In the chaos resulting from Fyve's actions, a key employee has resigned, putting the Company in immediate danger of losing a client that accounts for approximately 20% of its income, and other clients are likely to leave as well. This Court must deny Fyve's Motion for Temporary Restraining Oder and

Preliminary Injunction, and grant the Trust's Motion for Temporary Restraining Order and Preliminary and Permanent Injunction.

## II.     FACTUAL BACKGROUND

The factual background of this dispute is discussed in detail in the Trust's Complaint and in the Trust's Motion for a Temporary Restraining Order and Preliminary Injunction, both filed on September 7, 2023. In summary, the Trust agreed to sell to Fyve's predecessor, OnPoint Acquisitions, LLC, a business called Dan Peterson Property Management, LLC ("the Company"). The sale was conducted pursuant to:

a.   a "Membership Interest Purchase Agreement" ("Purchase Agreement"), (Ex. A);[2]

b.   a "Promissory Note," (Ex. C);

c.   an "Assignment of LLC Interests" ("Assignment"), (Ex. D); and

d.   a "Pledge and Security Agreement," (Ex. B).

Each of these documents is dated October 31, 2019.  They are referred to herein collectively as the "Transaction Documents."[3]

The Trust agreed to finance $800,000 of the purchase price of the Company. In exchange, OnPoint executed the "Promissory Note," the "Assignment of LLC Interests" and the "Pledge and Security Agreement."[4] OnPoint assigned to the Trust all of its LLC interests in the Company. OnPoint retained the rights of "beneficial ownership," including

---

[2] Citations to Exhibits are to the Exhibits to the Trust's "Verified Complaint," filed September 7, 2023.

[3] By its terms the Purchase Agreement is governed by Arizona law. Section 9.10 (a). The other Transaction Documents were created pursuant to the Purchase Agreement. Article I, "Transaction Documents."

[4] Fyve suggests that it may decide to question the validity of the Pledge and Security Agreement because it does not have a copy signed by the Trust. But OnPoint signed it, (*see* Ex. B), and the Parties have operated pursuant to its terms for almost four years. In fact, Fyve relies extensively on the terms of the Pledge and Security Agreement in its Motion.

the right to vote the membership interests and the right to take profits and distributions from the Company, but only for so long as OnPoint/Fyve was not in default under the Promissory Note. (*See* Ex. D; Ex. B ¶ 3.)

At the request of Fyve, the loan repayment terms under the Promissory Note were twice modified, most recently on April 30, 2023. (*See* Second Loan Modification Agreement, Ex. F.) Fyve then defaulted by failing to make a scheduled payment on July 31, 2023. The default was not waived or cured. There have been no further loan modifications.

Despite the fact that it is in default and has forfeited its ownership interests pursuant to the Transaction Documents, Fyve refuses to relinquish control of the Company to the Trust. Fyve insists that it will relinquish control only on certain conditions dictated by Fyve, including a 90-day transition period. None of the Transaction Documents provides for a 90-day transition period, or any transition period. The chaos and confusion caused by Fyve's refusal, has caused and is continuing to cause enormous harm to the Company. As discussed in the Verified Complaint, the Company's bank accounts have been frozen. They remain frozen. Fyve fired two key employees of the Company in apparent retaliation for Dan's efforts to gain control. Verified Complaint, Paragraph 44. Since the Complaint was filed, Dan has learned that another key employee has resigned, and that the Company is at great risk of losing a client that accounts for approximately 20% of the Company's income.

### III.  ARGUMENT – FYVE HAS NO RIGHT TO CONTROL THE COMPANY

**A. Fyve Is In Default On the Promissory Note and the Second Loan Modification Agreement.**

4

The Promissory Note includes within its definition of events of default any "event of non-payment within five (5) business days of when due;" as well as "[a]ny breach or default under the Pledge and Security Agreement." (Ex. C at 1.) The Pledge and Security Agreement includes within its definition of "Events of Default" "any failure by [OnPoint] to pay amounts due to [the Trust] under the [Promissory] Note." (Ex. B § 6(a).)

In its Motion, Fyve candidly admits that it is in default on its obligations under the Promissory Note and the Second Loan Modification Agreement. (*See* Df. Mot. at 7:10-11, 25-26.) Fyve failed to make its scheduled payment on July 31, 2023 and has continued to fail to make *any* amount of payment to date There has been no cure or waiver of the default, and no additional modification of the terms of the loan.

B. **Fyve Does Not Own the Company, and Is Not Entitled To Any Of Its Profits Or Assets.**

According to the Delaware LLC Act, 6 Del. C. §§ 18-101 *et seq*., upon which Fyve relies and quotes extensively in its Motion, "A member *ceases to be a member and to have the power to exercise any rights or powers* of a member *upon assignment of all* the member's limited liability company i*nterest*." *Id.* § 18-702(b)(3) (emphasis added). This is exactly what OnPoint did.

Pursuant to the Assignment, OnPoint "*assigns* and sets over" to the Trust:

> *all of its limited liability company interests* (the 'LLC Interests' in Dan Peterson Property Management, LLC (the 'LLC'), which LLC Interests include [OnPoint's] right, title and interest in and to the LLC's assets and [OnPoint's] capital account, allocable share of future profits and losses, distributive shares of distributions of [OnPoint], subject to the terms of the attached Pledge and Security Agreement and the [Promissory] Note. [The Trust's] *rights to allocable shares of future profits and losses, distributive shares of distributions, and the rights to the LLC's assets trigger* only upon *event of default* as described in the [Pledge and Security Agreement and the Promissory Note].

(Ex. D (emphasis added).) The language of the Assignment is clear and unequivocal. The Assignment is not a pledge or grant of a security interest. It is an unqualified assignment of all the LLC interests, with the Trust's right to receive the profits, distributions and "**the LLC's assets**" triggered when Fyve defaulted.

According to Arizona law, a person becomes a member of an LLC "[b]y agreeing to become a member, with the affirmative vote or consent of all the members." A.R.S. § 29-3401(C). Again, this is exactly what happened pursuant to the Assignment and pursuant to the Pledge and Security Agreement. Fyve consented that the Trust become the sole member of the Company, owning 100% of the membership interests and all legal and beneficial interests attached thereto, in the event of default.

Pursuant to the Pledge and Security Agreement[5], OnPoint transferred to the Trust "100%" of its Membership Interests (described as "Ownership Interests") in the Company. (*See* Ex. B § 3.)  OnPoint retained only the "*incidents of beneficial ownership* of such Ownership Interests including, but not limited to, the right to vote the Ownership Interests and the right to receive distributions *for so long as an Event of Default* (as defined in Section 6) *has not occurred* and is not continuing without waiver or cure."[6]  (*Id.* (emphasis added).) Again, the language is clear and unequivocal. Fyve transferred to the Trust all of its ownership interests in the Company. Fyve forfeited those interests when it defaulted without any waiver or cure.

Even if the Pledge and Security Agreement created a security interest, as Fyve argues, it doesn't change the outcome. Such a security interest would be in *100%* of the

---

[5] Which was signed by OnPoint. (Ex. B at 52.)

[6] At pp 9-10 of its Motion, Fyve argues that this quoted language does not grant the Trust an affirmative right to control the Company. However, that same Clause in Section 3 of the Pledge and Security Agreement also provides that OnPoint "shall deliver to and deposit with the [Trust} certificates evidencing any of the Ownership Interests," which are defined as all of the "issued and outstanding membership interests in [the Company]." Section 3 requires the transfer of the entire ownership interest in the Company, carving out only the described beneficial ownership interest, which was likewise forfeited when Fyve defaulted.

6

membership interests of the LLC, and Fyve is admittedly in default. Fyve does not own or have any right to control the Company.

Fyve's continuing exercise of control of the Company constitutes tortious interference with the Trust's contractual rights to the Company and the Company's contractual relationships with its clients, employees, and vendors. *See Miller v. Hehlen*, 209 Ariz. 462, 471, ¶ 32 (App. 2005) (The elements of a claim for tortious interference with contract or business expectancy are "the existence of a valid contractual relationship or business expectancy; the interferer's knowledge of the relationship or expectancy; intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted."). Fyve is also tortiously interfering with The Trust's and the Company's reasonable expectancies to continuing business relationships with clients, employees, and vendors. *See id.* Fyve is also trespassing on the Trust's office space, and converting its assets by refusing to allow Dan and the Trust to access them. *See id.* at 472, ¶ 34 ("'Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.'" (Quoting *See Focal Point, Inc. v. U-Haul Co. of Ariz.*, 155 Ariz. 318, 319 (App. 1986)).).

C. **Fyve Does Not Have the Right to "Control" the Company.**

Fyve is off-base in its reliance on default provisions of the Arizona and Delaware LLC acts providing that a transfer of an interest in an LLC does not by itself give the transferee the right to participate in the management of the LLC. A.R.S. § 29-3502(A) an (B); 6 Del. C. § 18-702. As discussed above, the Assignment and the Pledge and Security Agreement give the Trust the rights to the Company's "profits," "distributions," "the LLC's assets," and "the right to vote the Ownership Interests." This is control.

It is important to note that OnPoint/Fyve did not assign a portion of the ownership interests, but rather all (100%) of the ownership interests in the Company, to the Trust. There is no ownership interest, beneficial or otherwise, left for Fyve to claim. Upon the event of default without waiver or cure full ownership of the Company, together with the right to vote membership interests and to reap its profits, went to the Trust. This perhaps explains why Fyve's Motion is focused solely on its claimed right to "control" the Company.

There is no danger here of a member of the Company having to "endure a new co-manager without consent." (*See* Df. Mot. at 7.) There are no other members, and Fyve consented.

Fyve asserts that it "did not consent to [the Trust] exercising control without conditions." Actually, it did. In fact, none of the Transaction Documents provides for *any* transition period. Fyve states that its willingness to "allow" the Trust to take back the Company was conditioned on an orderly 90-day transition. Fyve is in no position to hold the Company hostage and to dictate new and additional terms to the Transaction Documents.

Fyve asserts that Paragraph 7 of the Pledge and Security Agreement (entitled "Remedies") does not authorize the Trust "to unilaterally act to seize control of" the Company. Fyve is wrong. In fact, Fyve readily admits that the Trust is entitled to sell the Company to a third party whenever it wants. (*See* Pl. Mot. at 9; Ex. B § 7.)

Moreover, the Pledge and Security Agreement specifically provides that the Trust has "all rights and remedies at law or in equity provided by any other applicable law." (Ex. B § 7.) That same Section also specifies that "[a]ll rights, remedies, or powers conferred upon [the Trust] herein or by law shall be cumulative." (*Id.*) The Trust is not required to elect its remedies and its choices are not as limited as Fyve suggests in its Motion. Injunctive relief is a remedy commonly used for trespass, tortious interference with

contract and tortious interference with business expectancy, all of which are being committed by Fyve at this very moment. As Fyve admits at page 15 of its Motion, "the statutory and contractual rights of litigants are properly enforced by the courts." Contrary to Fyve's suggestion, the Trust is not resorting to "self-help" to gain control of its Company. It has brought this action seeking judicial intervention to help save the business for the Trust.

### D. Fyve Is Not Entitled to Injunctive Relief.

#### 1. Fyve Will Not Succeed on the Merits.

As discussed herein, Fyve will not succeed on the merits of its claimed right to "control" the Company. It does not own the Company and no longer has any right to control it.

#### 2. There Is No Danger of Fyve Suffering Irreparable Harm.

As discussed herein, it is the Trust, not Fyve that is suffering irreparable harm by Fyve's insistence on holding the Company hostage. Key employees have been fired by Fyve and one key employee has resigned. This employee was responsible for handling the relationship with a customer of fifteen (15) years that amounts to approximately twenty percent (20%) of the Company's revenue. The Company is now in immediate danger of losing this long-time account because of Fyve's actions and inactions.

#### 3. The Balance of Hardships Favors the Trust, Not Fyve.

Fyve is in the process of destroying the value of the Company. It refuses to allow its rightful owner and sole member to even attempt to intervene to protect its interests. It continues to hold the Company hostage while demanding terms that are non-existent in the Transaction Documents and are not provided by law. It is the Trust, not Fyve, that is bearing the hardship of this situation. The Company's assets are actively being squandered and the resultant value of the Company is being severely diminished by Fyve's actions. On

9

the other hand, Fyve does not have the right to any of the profits, distributions or assets of the Company.

### 4. Public Interest Does Not Favor Injunctive Relief for Fyve.

Fyve's conduct as described herein and in the Verified Complaint is outrageous, unjustified and inexplicable. There is no reason other than pure malice for Fyve's behavior. It does not own the Company. It has no contractual or other legal right to control the Company, and is not entitled to its assets. The public interest would be served by denying Fyve's request for injunctive relief.

## IV. CONCLUSION

For the reasons set forth herein and in the Trust's Verified Complaint and Motion for a Temporary Restraining Order and Preliminary Injunction, Fyve's Motion for a Temporary Restraining Order and Preliminary Injunction must be denied.

**RESPECTFULLY SUBMITTED** this 22nd day of September 2023.

**MILLS + WOODS LAW, PLLC**

By     /s/ Sean A. Woods
    Robert T. Mills
    Sean A. Woods
    5055 North 12th Street, Suite 101
    Phoenix, AZ 85014
    *Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2023, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Randy Nussbaum
Nussbaum@SacksTierney.com
Clifford J. Roth
Roth@SacksTierney.com
**SACKS TIERNEY P.A.**
4250 N Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
*Attorneys for Defendant Fyve, Inc.*

    */s/ Ben Dangerfield*
_____

11