Randy Nussbaum (SBN 006417)
Nussbaum@SacksTierney.com
Clifford J. Roth (SBN 006442)
Roth@SacksTierney.com
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone: 480.425.2600

Attorneys for Defendant Fyve, Inc.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dan Peterson, as Trustee of the Dan D. Peterson Living Trust dated April 2, 2009, a trust formed under the laws of Arizona,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Fyve, Inc, a Delaware corporation,<br><br>　　　　Defendant. | No. 2:23-CV-1874-JJT<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS CROSS- MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>(Assigned to Hon. John J. Tuchi)<br><br>(Evidentiary Hearing Scheduled for October 6, 2023, at 9:30 a.m.) |

Defendant Fyve[1] respectfully submits this Reply in support of its Cross-Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 9, filed 9/12/23). This Reply is supported by Defendant's Response to Plaintiff's Motion for Temporary Restraining Order and for Preliminary Injunction (Doc. 11, filed 9/21/23), which is incorporated herein by reference.

The sole issue presented to the Court in the parties' Cross-Motions for Injunctive Relief is whether Fyve or Lender has the right to control the business and affairs of DPPM. That is a legal issue that should be resolved through oral argument at the beginning of the hearing on 10/6/23 based on the content of the applicable documents (loan and sale

---

[1] Terms defined in the Cross-Motion have the same meaning in this Reply.

3660952.v1

documents and DPPM's LLC/operating agreements) and the controlling LLC statutes of Delaware and Arizona. An evidentiary hearing will not assist the Court in determining the outcome since the factual disputes over what has occurred subsequent to Lender's improvident attempted takeover of DPPM are irrelevant to who has the legal right to control under the documents and law.

Nothing in Lender's Response (Doc. 12, filed 9/22/23) establishes that Lender is entitled to seize ownership and control over DPPM. To the contrary, under the plain language of the documents, Lender is not the owner with rights of control, but rather only has a security interest in the collateral to secure repayment of the loan. Similarly, under the Delaware and Arizona LLC statutes, Lender has no right to control the business and affairs of DPPM, but rather is limited to the economic rights of an assignee and the rights of a secured creditor to sell its collateral in a UCC sale.

The Court should grant injunctive relief in favor of Fyve to restore it to full control over the management, operations, and finances of DPPM.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Fyve Is Entitled to Injunctive Relief to Restore Its Control Over DPPM

In his Response, Lender mischaracterizes Fyve's legal position in at least two significant respects. First, he asserts that "Fyve does *not* dispute that: . . . b. It assigned to the Trust [Lender] 100% of its ownership interest in the Company [DPPM]." (Doc. 12, 2:5-8, emphasis in original). In fact, Fyve denies that Lender received any ownership interest in or control rights over DPPM. Fyve's Cross-Motion demonstrates in detail that Lender only received the economic rights of an assignee and the rights of a secured creditor to sell its collateral in a UCC sale.

- The Pledge and Security Agreement (Complaint Ex. B, Doc. 1-3) and the Assignment (Complaint Ex. D, Doc. 1-5) created a security interest in the collateral and did not transfer ownership or control over DPPM. (Cross-Motion, 8:7-10:28). In particular, ¶ 7 of the Pledge and Security Agreement (admittedly unsigned by Lender) is the only provision in the agreement that grants remedies to Lender in the event of a default, and it

2

grants the rights of a secured party under the Delaware UCC, to sell the collateral and apply the sale proceeds to the amount owed. (Cross-Motion, 8:24-9:15).  Those provisions granting UCC sale rights would be rendered meaningless if, as Lender contends, the secured party could bypass the UCC sale protections and simply use self-help to seize full ownership and control of the collateral.  Under no reasonable scenario would a buyer/borrower immediately assign back to the seller the very equity it just purchased.  Significantly, the purchase price for DPPM was $1.8 million, with approximately $1 million paid in cash by Fyve and a Promissory Note for $800,000.  (Complaint Exhibits A and C, Docs. 1-2 and 1-4).

- DPPM's LLC operating agreements (Cross-Motion Exhibits 1-3, Docs. 9-1 – 9-3) are silent on the issue of an assignment of a member's limited liability company interest. Therefore, the gap in those agreements on that issue is filled by the Delaware LLC Act. (Cross-Motion, 7:13-8:6).  As noted in the Cross-Motion (5:8-11), the Delaware LLC Act is "an enabling statute whose primary function is to fill gaps, if any, in a limited liability company agreement." *Achaian, Inc. v. Leemon Family LLC*, 25 A.3d 800, 802 (Del. Ch. 2011).

- Under 6 Del. C. § 18-702, a statute in the Delaware LLC Act entitled "Assignment of limited liability company interest" (emphasis added):

    1.    "The assignee of a member's limited liability company interest ***shall have no right to participate in the management of the business and affairs of a limited liability company***"; and

    2.    "An assignment of a limited liability company interest ***entitles the assignee to share in such profits and losses, to receive such distribution or distributions***, and to receive such allocation of income, gain, loss, deduction, or credit or similar item to which the assignor was entitled, to the extent assigned."

(Cross-Motion, 5:7-6:19, 7:10-12).

- Delaware case law confirms the meaning of § 18-702.  As stated in *Achaian*, 25 A.3d at 804-05 (emphasis added):  "Thus, it is clear that the default rule under the Act is that an assignment of an LLC interest, by itself, does not entitle the assignee to become a

3

3660952.v1

member of the LLC; rather, ***an assignee only receives the assigning member's economic interest in the LLC to the extent assigned***." (Cross-Motion, 6:20-7:9).

- If Arizona law is deemed to apply to DPPM because DPPM is an Arizona LLC, the result is the same as under Delaware law, i.e., Lender did not receive any rights to participate in the management or conduct of DPPM's activities and affairs, but rather is limited to the economic rights to receive distributions to which the transferor would otherwise be entitled. Specifically, under A.R.S. § 29-3502, "[a] transfer, in whole or in part, of a transferable interest . . . does not entitle the transferee to . . . [p]articipate in the management or conduct of the company's activities and affairs, . . . [and a] transferee has the right to receive, in accordance with the transfer, distributions to which the transferor would otherwise be entitled." (Cross-Motion, 11:1-12:2).

In sum, Lender is wrong in claiming that Fyve does not dispute Lender's 100% ownership and control over DPPM, and the loan documents, DPPM's agreements and the LLC statutes fully support Fyve's position that Fyve, and not Lender, is entitled to control over DPPM.

Second, Lender misstates Fyve's position in claiming that "Fyve does *not* dispute that: . . . d. Dan and the Trust [Lender] have the right to take control of the Company, albeit only after a lengthy transition period to be dictated by Fyve." (Doc. 12, 2:5-13, emphasis in original). Here again, Fyve does dispute, and has always disputed, Lender's right to take control of DPPM except as part of a full settlement with a release and a period for the orderly transition of software licensing, data migration, accounts payable, payroll, and similar matters that are currently integrated with Fyve's other business operations. Fyve's email dated 9/1/23 (Complaint Ex. P, Doc. 1-17, p. 2) expressly stated that DPPM's business could be transitioned back to DPPM, but only "in an orderly fashion and as part of a full settlement." This issue was further addressed in the Cross-Motion (12:3-11).

Fyve stands by the positions taken in its prior briefs (Cross-Motion and Response to Lender's Motion for Injunctive Relief (Docs. 9 and 11), which need not be belabored here.

4

3660952.v1

## II. Conclusion

Lender is attempting to exercise control rights not granted to him by Fyve's predecessor (OnPoint) or the legislatures of Delaware and Arizona. For all of these reasons and those set forth in the Cross-Motion, Fyve respectfully requests the Court to (1) sign and enter the form of Temporary Restraining Order in Favor of Defendant attached to the Cross-Motion as Exhibit 6, and (2) award attorneys' fees to Fyve under A.R.S. § 12-341.01 and other applicable law.

RESPECTFULLY SUBMITTED this 29th day of September, 2023.

SACKS TIERNEY P.A.

By: */s/ Clifford J. Roth*
  Randy Nussbaum
  Clifford J. Roth
  Attorneys for Defendant Fyve, Inc.

3660952.v1

CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2023, I electronically transmitted the foregoing Defendant's Reply in Support of Its Cross-Motion for Temporary Restraining Order and Preliminary Injunction to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

> Robert T. Mills, Esq.
> Sean A. Woods, Esq.
> Mills + Woods Law, PLLC
> 5055 North 12th Street, Suite 100
> Phoenix, Arizona 85014
> *Attorneys for Plaintiff*

/s/ Brittany Crane

3660952.v1