**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dan D. Peterson Living Trust Dated April 2, 2009,<br><br>        Plaintiff,<br><br>v.<br><br>Fyve LLC,<br><br>        Defendant. | No. CV-23-01874-PHX-JJT<br><br>**ORDER** |

At issue are Plaintiff Dan D. Peterson Living Trust's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2), to which Defendant Fyve, Inc. filed a Response (Doc. 11) and Plaintiff filed a Reply (Doc. 14); and Defendant's Cross-Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 9), to which Plaintiff filed a Response (Doc. 12) and Defendant filed a Reply (Doc. 15). The Court held a hearing on the Motion and Cross-Motion on October 6, 2023. (Doc. 21.)

**I.    BACKGROUND**

Plaintiff Dan D. Peterson, as Trustee of the Dan D. Peterson Living Trust dated April 2, 2009 (the "Trust"), owned Dan Peterson Property Management, LLC (the "Company"), an Arizona limited liability company located in Scottsdale, Arizona. On October 31, 2019, the Trust entered into a Membership Interest Purchase Agreement with OnPoint Acquisitions, LLC, in which the Trust agreed to sell all its membership interest in the Company for $1.8 million. Accompanying the Purchase Agreement was a Pledge and Security Agreement and Promissory Note, whereby the Trust financed $800,000 of the

purchase price. These documents provided the terms of OnPoint's payment of the $800,000 plus interest to the Trust and gave OnPoint "all incidents of beneficial ownership of such Ownership Interests including, but not limited to, the right to vote the Ownership Interests and the right to receive distributions for so long as an Event of Default . . . has not occurred and is continuing without waiver or cure." (Doc. 1, Verified Compl. ("Compl.") Ex. B § 3.) An Event of Default under the terms of the documents included a failure by OnPoint to timely pay amounts due under the Promissory Note.

Defendant Fyve, Inc., the successor in interest to OnPoint with respect to this transaction, was unable to make certain scheduled payments under the Promissory Note, and the Trust and Fyve executed Loan Modification Agreements on November 1, 2022, and April 30, 2023. Subsequently, Fyve failed to make a scheduled payment on the Promissory Note on July 31, 2023, and on August 7, 2023, the Trust notified Fyve that it was in default under the Promissory Note. The Trust requested that Fyve turn over "all assets, keys, passwords, security codes, account access information, and any other information necessary for the operation of the business." (Compl. Ex. G.)

Since then, Mr. Peterson claims that Fyve has denied him access to the Company's operations, including by changing the locks at the Company's offices, blocking his access to the Company email account and other software, and attempting to block his access to the Company bank account. Because of what the bank terms a "bonafide dispute" as to the authorized users of the bank account, the bank has frozen the Company bank account. (Compl. Ex. R.)

On September 7, 2023, the Trust filed a Complaint in this Court seeking a declaratory judgment under 28 U.S.C. § 2201 that the Trust is the "sole owner of the Company and has the right to control it and its operations." (Compl. ¶ 64.) At the same time, the Trust filed a Motion for Temporary Restraining Order ("TRO") and for Preliminary Injunction under Federal Rule of Civil Procedure 65 (Doc. 2). In Response, Fyve filed a Cross-Motion for TRO and Preliminary Injunction (Doc. 9).

## II. LEGAL STANDARD

To obtain preliminary injunctive relief, Plaintiff must show that "(1) [it is] likely to succeed on the merits, (2) [it is] likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in [its] favor, and (4) an injunction is in the public interest." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 9 (2008)). The Ninth Circuit Court of Appeals, employing a sliding scale analysis, has also stated "'serious questions going to the merits' and a hardship balance that tips sharply toward the [movant] can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1078 (9th Cir. 2013) *cert. denied*, 134 S. Ct. 2877 (2014) (quoting *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1132 (9th Cir. 2011)).

As discussed at the hearing (Doc. 21), because the Court ordered Plaintiff to provide notice of its lawsuit and Motion to Defendant, the Court declined to enter a Rule 65(b) TRO without notice, and the Court considers Plaintiff's request and Defendant's counter-request to be for a preliminary injunction.

## III. ANALYSIS

As a threshold matter, the Court must address the propriety of the cross-Motions for preliminary injunctive relief before it. As discussed in the hearing (Doc. 21), Plaintiff included at least one legal claim in its Complaint—for Declaratory Judgment under 28 U.S.C. § 2201 (Count II)—upon which to rest its present request for injunctive relief.[1] But Defendant has not filed a counterclaim, so it is not immediately apparent what Defendant bases its request for a preliminary injunction upon.

"A court's equitable power lies only over the merits of the case or controversy before it. When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pac. Radiation Oncology,*

---

[1] The first claim raised in the Complaint (Count I) is for preliminary injunctive relief, which is not by itself a claim at all; indeed, Plaintiff used that vehicle for seeking relief on its claim for Declaratory Judgment by filing its Motion (Doc. 2).

- 3 -

*LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015); *see also De Beers Consol. Mines, Ltd. v. U.S.*, 325 U.S. 212, 220 (1945) ("A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally."). Based on that principle, courts in the Ninth Circuit have denied a defendant's request for injunctive relief when the defendant has raised no counterclaim upon which to base that request. *See, e.g.*, *Profil Institut fur Stoffwechselforschung GmbH v. Prosciento, Inc.*, 2017 WL 1394089 (S.D. Cal. Feb. 27, 2017). At least one District Court has opined that "there may be circumstances where a court is empowered to issue interim injunctive relief in favor of a defendant who has not asserted a counterclaim," such as where the defendant requests relief equivalent to that which would result if the plaintiff does not prevail on the merits of its claim—in other words, relief "of the same character as that which may be granted finally." *Bank of N.Y. Mellon v. Foothills at MacDonald Ranch Master Ass'n*, 2019 WL 1529382, at *1–2 (D. Nev. Feb. 12, 2019) (citing *De Beers*, 325 U.S. at 220)). But the Court has uncovered no case in which a court in the Ninth Circuit has granted a defendant's motion for preliminary injunction in the absence of a counterclaim.[2]

The relief Defendant seeks in its Counter-Motion for Preliminary Injunction is essentially the negative, or opposite, of the relief Plaintiff seeks in its Motion. In this way, the relief Defendant seeks is "of the same character as that which may be granted finally." *De Beers*, 325 U.S. at 220. For this reason, the Court will consider Defendant's arguments in its Counter-Motion. But the Court also notes that the Counter-Motion is in one sense moot, because the Court is already required to determine whether Plaintiff is likely to succeed on the merits of its claims by way of Plaintiff's Motion, and the essence of Defendant's arguments is that Plaintiff is not likely to succeed on the merits of its claim for declaratory relief.

---

[2] The Court pointed this defect out at the Hearing (Doc. 21), but Defendant filed no counterclaim in the ensuing four weeks since the Hearing.

- 4 -

### A. Likelihood of Success on the Merits

The Declaratory Judgment Act states that "courts may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Under the Declaratory Judgment Act, district courts have the "unique and substantial discretion" to decide whether to issue a declaratory judgment. *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). Here, Plaintiff seeks a declaration that "it is the sole owner of the Company and has the right to control it and its operations." (Compl. ¶ 64.)

The hearing on the parties' Motions made clear that no dispute remains as to the first aspect of Plaintiff's claim for Declaratory Judgment—that Plaintiff is the sole owner, or member, of the Company. (*E.g.*, 10/6/2023 Hr'g Tr. at 33 (Defendant "agrees that [Plaintiff] had the right to exercise self help to seize the interest").) But Plaintiff has not shown a likelihood of success on the merits that, as a result of his repossession of the membership interests in the Company, Mr. Peterson has the right to ignore the Company's current management structure and makeup as prescribed in the amended Articles of Organization, and directly assert sole managerial control over the Company's operations without first amending the Articles to address management structure and makeup. Indeed, in its Motion, Plaintiff fails to address the Company's current manager-managed structure at all, arguing only a likelihood of success on the merits that "Fyve no longer has any beneficial ownership in the Company" and "[t]he Trust owns 100%." (Doc. 2 at 7–8.)

The most recent Articles of Amendment to the Company's Articles of Organization, dated April 22, 2022, specify that the Company is managed by a group of four managers: Mr. Peterson, Albert Spell, Jeff Bohn, and John Ferron. (10/6/2023 Hr'g Ex. 54.) Plaintiff provides no legal support for the proposition that the LLC's Articles of Organization became ineffective upon change of ownership interest, or, here, that Mr. Peterson became the sole manager of the otherwise four-manager-managed Company. *See, e.g.*, A.R.S. § 29-3201(4); *Ariz. State Dep't of Revenue v. Quality Sanitary & Maint. Supply*, 2007 WL 9898349, at *2 (Ariz. Super. Ct. Jan. 26, 2007) (noting "where the articles of organization

so provide (as they do here), management is vested in the named manager or managers, subject to any provisions in the operating agreement limiting the manager's authority").

Nothing in the documents the parties provided to the Court—the Company's Articles of Organization, Articles of Amendment, Purchase Agreement, Pledge and Security Agreement, or Promissory Note—provide that Mr. Peterson becomes sole manager of the Company upon Defendant's default on the Promissory Note. And, as Defendant argues in its Cross-Motion, the Arizona and Delaware statutes also do not provide Plaintiff with management control of the Company upon acquiring the ownership interest. (Doc. 9 at 4–7, 11–12 (citing 6 Del. C. §§ 18-101(10), 18-702; A.R.S. §§ 29-3102(29), 29-3502(A) & (B)).) The Court thus cannot enjoin Messrs. Spell, Bon, and Ferron from executing their management duties under the currently applicable Articles of Organization, even in the event of the change of ownership interest.

Although the parties seem to be in desperate need of resolution of a dispute between them that has become personal, both sides overreach in their requests for injunctive relief. In the absence of a properly executed amendment to the Articles of Organization, all the Court can require is that the Company continue to operate under the provisions of its applicable organizational and operational documents. As far as management, that means that the Company continue to be managed by Messrs. Peterson, Spell, Bon, and Ferron under the current amended Articles of Organization. Specifically, with regard to the Company's currently-frozen bank account, if all four managers have access to it under the Company's organizational and operational documents, they shall all continue to have access to it. Thus, the Court will deny Plaintiff's request to enjoin Messrs. Spell, Bon, and Ferron from conduct consistent with management of the Company. (Doc. 2-1 at 3–4.) Likewise, the Court will deny Defendant's requests that the Court declare that "Fyve is restored to full control" over the Company or that Plaintiff "is enjoined from taking any action to control [the Company] or its business operations and affairs." (Doc. 9-6 at 2.)

### B. The Other *Winter* Factors

To the extent the parties have provided the Court with a basis to enter injunctive relief—specifically, that Plaintiff owns the Company and that its management is governed by the applicable organizational and operational documents—there is no real argument that the other *Winter* factors are not met. Irreparable harm to the Company is likely if it is not managed pursuant to its Articles of Organization, and the balance of equities tips in Plaintiff's favor in a determination that Plaintiff has the sole ownership interest in the Company. Moreover, the public has an interest in the limited injunctive relief the Court can grant: a declaration of the Company's ownership and its management under properly executed LLC documents.

### C. Bond

Rule 65(c) permits a court to enter preliminary injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully restrained." A court may only "dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining [its] conduct." *Jorgensen v. Cassidy*, 320 F.3d 906, 919 (9th Cir. 2003). The court must make a finding as to the surety bond amount it considers proper. *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).

Here, the Court acknowledges aspects of both parties' requests for injunctive relief, so the Court finds this constitutes the rare instance in which no bond is required of either party.

**IT IS THEREFORE ORDERED** granting in part and denying in part Plaintiff Dan D. Peterson Living Trust's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2) and Defendant Fyve, Inc.'s Cross-Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 9).

**IT IS FURTHER ORDERED** as follows:

Dan Peterson, as Trustee of the Dan D. Peterson Living Trust, dated April 2, 2009 (the "Trust"), owns 100% of the membership interest of Dan Peterson Property

Management, LLC, an Arizona limited liability company (the "Company"), and the Trust is entitled to the economic rights associated therewith. The Company shall continue to be managed under the applicable organizational and operational documents, including the Articles of Organization and Articles of Amendment thereto. Specifically, Messrs. Peterson, Spell, Bon, and Ferron shall continue to co-manage the Company until such time as properly executed Articles of Amendment to the Articles of Organization specify otherwise. Mr. Peterson may not enjoin Messrs. Spell, Bon, and Ferron from conduct consistent with management of the Company, and Messrs. Spell, Bon, and Ferron may not enjoin Mr. Peterson from conduct consistent with management of the Company.

**IT IS FURTHER ORDERED** that, by November 17, 2023, the parties shall jointly file a Notice to state their positions as to whether any claim in Plaintiff's Complaint (Doc. 1) remains for the Court to resolve, or whether the Court can close this matter.

Dated this 3rd day of November, 2023.

Honorable John J. Tuchi
United States District Judge