Randy Nussbaum (SBN 006417)
Nussbaum@SacksTierney.com
Clifford J. Roth (SBN 006442)
Roth@SacksTierney.com
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone: 480.425.2600

Attorneys for Defendant Fyve, Inc.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Dan Peterson, as Trustee of the Dan D. Peterson Living Trust dated April 2, 2009, a trust formed under the laws of Arizona,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Fyve, Inc, a Delaware corporation,<br><br>　　　　Defendant. | No.  2:23-CV-1874-JJT<br><br>**DEFENDANT'S MOTION FOR AWARD OF ATTORNEYS' FEES**<br><br>(Assigned to Hon. John J. Tuchi) |

Pursuant to Rule 54(d)(2), Federal Rules of Civil Procedure, and LRCiv 54.2, Defendant Fyve, Inc. ("Fyve") respectfully moves for an award of reasonable attorneys' fees incurred in this action. Based upon the following Memorandum of Points and Authorities, the Certification of Consultation, the Declaration of Randy Nussbaum, and other exhibits attached hereto, which are incorporated herein by reference, Fyve requests an award of attorneys' fees in the amount of $88,854.50 against Plaintiff Dan Peterson, as Trustee of the Dan D. Peterson Living Trust dated April 2, 2009 ("Peterson").

As discussed below;  (1) Fyve is eligible for an award of attorneys' fees as the successful party under A.R.S. § 12-341.01; (2) Fyve is entitled to a fee award under the *Warner* factors to be considered in a fee motion under § 12-341.01; and (3) the amount of fees requested is reasonable.

3713483.v1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Fyve's Is Eligible for an Award of Attorneys' Fees

### A. Nature of the Case

This case involved a battle for management control over the operations of Dan Peterson Property Management, LLC (the "Company"). Peterson lost that battle, as the management of the Company remained unchanged by the Court's ruling: "The Company shall continue to be managed under the applicable organizational and operational documents, including the Articles of Organization and Articles of Amendment thereto." (Order, Doc. 22, 8:2-4).

On 9/7/23, Peterson filed a Complaint (Doc. 1) and a Motion for Temporary Restraining Order and for Preliminary Injunction (Doc. 2). The two-count Complaint sought injunctive relief (Count 1) and a declaratory judgment (Count 2, ¶ 64) that Peterson "is the sole owner of the Company and has the right to control it and its operations." No damages were sought by Peterson.

On the same day the Complaint was filed, 9/7/23, the Court denied Peterson's request for an ex parte Temporary Restraining Order ("TRO") by issuing an Order (Doc. 6) allowing the defendant to respond to the Motion for TRO and Preliminary Injunction by 9/22/23. Because Fyve was not aware of that Order, Fyve's counsel immediately sought to prevent the Court from granting ex parte relief by filing on 9/8/23 Defendant's Response to Plaintiff's Request for Temporary Restraining Order Without an Opportunity to Be Heard (Doc. 7). Fees incurred in preparing that Response could have been avoided if Peterson had timely served the 9/7/23 Order denying ex parte relief (Peterson had previously served the Complaint and related documents on Fyve's counsel by email on 9/7/23 at 11:40 a.m.; *see* Peterson's Attorney Certification, Doc 1-20).

On 9/12/23, Fyve filed its Cross-Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 9). On 9/21/23, Fyve filed its Response to Plaintiff's Motion for Temporary Restraining Order and for Preliminary Injunction (Doc. 11), which gave notice of Fyve's request for an award of attorneys' fees under A.R.S. § 12-341.01. (7:5-7).

2

3713483.v1

After the Cross-Motions for Injunctive Relief were fully briefed, the Court held a hearing on 10/6/23, which ultimately was treated as oral argument on the legal issues, as Fyve had requested (Doc. 11, 2:2-4; Doc. 15, 1:23-2:5), and not also as an evidentiary hearing, which the parties had prepared for. (Civil Minutes, dated 10/6/23, Doc. 21; *see* Joint Pre-Hearing Statement, Doc 17).

On 11/3/23, the Court issued its Order (Doc. 22) granting in part and denying in part the Cross-Motions for Injunctive Relief. A Judgment (Doc. 25) was entered on 11/27/23. The 11/3/23 Order and 11/27/23 Judgment are discussed in the following section of this Motion.

### B.  Judgment Upon Which Fyve Seeks a Fee Award

The 11/27/23 Judgment (Doc 25) states: "IT IS ORDERED AND ADJUDGED that pursuant to the Court's Order filed 11/27/23, the complaint and action are dismissed without prejudice."

The Court's Order filed 11/27/23 (Doc. 24) addressed the parties' Joint Notice Regarding the Parties' Claims (Doc. 23) and ruled as follows: (1) it rejected Peterson's request for a voluntary dismissal (because the time for voluntary dismissal had passed since the Court had addressed the merits of Peterson's claims); (2) it agreed with Fyve that entry of a Judgment was appropriate; and (3) it directed the Clerk to enter a Judgment dismissing Peterson's claims without prejudice and close this matter.

The Court's substantive ruling is set forth in its Order filed on 11/3/23 (Doc. 22). That 11/3/23 Order supports Fyve's eligibility for a fee award as the successful or prevailing party in numerous respects:

1.  Count 1 of Peterson's Complaint seeking injunctive relief "is not by itself a claim at all." (Doc. 22, fn. 1, 3:27-28)

2.  The Court considered the arguments in Fyve's Cross-Motion for Injunctive Relief even though no Counterclaim had been filed.[1]  (*Id.*, 4:17-21).

---

[1]  The Court issued its Order on 11/3/23, before the Counterclaim was due on 11/7/23. Fyve avoided incurring unnecessary fees by not preparing an Answer and Counterclaim

3

3713483.v1

3.  The Order stated (*id.,* 5:6-7): "[Peterson] seeks a declaration that 'it is the sole owner of the Company and has the right to control it and its operations.' (Compl. ¶ 64)." Thus, the Court recognized that there were two aspects of Peterson's claim, namely, (A) ownership of the Company, and (B) control of the Company. As to the first aspect of the claim, the Court observed that ownership was not disputed by Fyve: "The hearing on the parties' Motions made clear that no dispute remains as to the first aspect of Plaintiff's claim for Declaratory Judgment—that Plaintiff is the sole owner, or member, of the Company." (*Id.*, 5:8-10). This confirms that the Court correctly understood that the dispute in this case was over control, not ownership.

4.  Fyve successfully defended Peterson's claim for control over the Company by arguing that management control of the Company was governed by the Amended Articles of Organization filed with the Arizona Corporation Commission on 4/22/22, which appointed four managers of the Company as a manager-managed limited liability company. (Fyve's Cross-Motion for Injunctive Relief, Doc. 9, 12:12-28; Fyve's Response to Plaintiff's Motion for Injunctive Relief, Doc. 11, 6:19-26). The Court agreed with Fyve's argument and on that basis denied Peterson's claim for control of the Company. The 11/3/23 Order states in part (Doc. 22, 5:11-19, 6:15-17, 7:26, 8:2-4):

> But Plaintiff has not shown a likelihood of success on the merits that, as a result of his repossession of the membership interests in the Company, Mr. Peterson has the right to ignore the Company's current management structure and makeup as prescribed in the amended Articles of Organization, and directly assert sole managerial control over the Company's operations without first amending the Articles to address management structure and makeup. Indeed, in its Motion, Plaintiff fails to address the Company's current manager-managed structure at all, arguing only a likelihood of success on the merits that "Fyve no longer has any beneficial ownership in the Company" and "[t]he Trust owns 100%." (Doc. 2 at 7–8.).
> . . . .
>
> In the absence of a properly executed amendment to the Articles of Organization, all the Court can require is that the Company continue to operate under the provisions of its applicable organizational and operational documents.
> . . . .

---

before the Court's ruling.

4

3713483.v1

**IT IS FURTHER ORDERED** as follows:

. . . The Company shall continue to be managed under the applicable organizational and operational documents, including the Articles of Organization and Articles of Amendment thereto. Specifically, Messrs. Peterson, Spell, Bon, and Ferron shall continue to co-manage the Company until such time as properly executed Articles of Amendment to the Articles of Organization specify otherwise.

5. Fyve argued at length that none of the transactional, organizational or operational documents in this case granted Peterson the right to control the Company after a default under the Promissory Note. (Doc. 9, 7:13-10:28; Doc. 11, 3:20-4:25; Doc. 15, 2:24-3:16, 5:2-3). The Court agreed with Fyve's arguments: "Nothing in the documents the parties provided to the Court—the Company's Articles of Organization, Articles of Amendment, Purchase Agreement, Pledge and Security Agreement, or Promissory Note—provide that Mr. Peterson becomes sole manager of the Company upon Defendant's default on the Promissory Note." (Doc. 22, 6:3-6)

6. Similarly, the Court accepted Fyve's position that Peterson was not entitled to exercise control of the Company under Arizona or Delaware law. (Doc. 9, 4:17-7:12, 11:1-12:2; Doc 11, 5:1-6:13; Doc. 15, 3:17-4:15, 5:2-3). The Court stated: "And, *as Defendant argues in its Cross-Motion*, the Arizona and Delaware statutes also do not provide Plaintiff with management control of the Company upon acquiring the ownership interest. (Doc. 9 at 4–7, 11–12 (citing 6 Del. C. §§ 18-101(10), 18-702; A.R.S. §§ 29-3102(29), 29-3502(A) & (B))." (Doc. 22, 6:6-10) (emphasis added).

7. Peterson requested an injunction bond of $50,000 if the Court granted Fyve's Cross-Motion for Injunctive Relief, whereas Fyve advocated for no bond or a minimal bond regardless of which party is granted injunctive relief. (Doc. 17, 5:13-27). The Court ruled that "no bond is required of either party." (Doc. 22, 7:19-21).

### C.  A.R.S. § 12-341.01 Authorizes an Award of Fees to Fyve

Section 12-341.01(A) provides that "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees."

5

3713483.v1

Section 12-341.01 applies equally to those who obtain affirmative relief and those who successfully defend:

> According to A.R.S. § 12-341.01.B, the purpose of an award of attorneys' fees under section A of that statute is to "mitigate the burden of the expense of litigation to establish a just claim or defense." Thus, A.R.S. § 12-341.01.A is remedial in nature and such relief is equally available to those who successfully defend an action as to those who seek affirmative relief.

*Schwartz v. Farmers Ins. Co. of Arizona*, 166 Ariz. 33, 38 (App. 1990).

In light of the remedial objectives of Section 12-341.01(A) and (B), it has been consistently construed in a liberal manner, particularly the "arising out of a contract" clause. *See generally* ARIZONA FEES MANUAL § 2.6; John C. Rambow, Note, *Statutory Attorneys' Fees in Arizona: An Analysis of A.R.S. Section § 12-341.01*, 24 ARIZ. L. REV. 659, 662-65 (1982); *see ML Servicing Co. v. Coles*, 235 Ariz. 562, 570, ¶30 (App. 2014) ("meaning of 'arises out of contract' is broad for the purpose of this statute").

Here, Peterson's claim that he had the right to control the Company and its operations was based on his misinterpretation of the contracts that specify the terms of Peterson's 2019 sale of the Company to Fyve's predecessor, OnPoint Acquisitions, LLC. Those contract documents include the Purchase Agreement, Pledge and Security Agreement, Promissory Note, Assignment, and UCC Financial Statement. (Docs. 1-2, 1-3, and 1-4, 1-5, Doc. 14, p. 10). The Court ultimately ruled that Peterson had no right under those contract documents, or anything else, to be the sole manager of the Company. As noted above, the Court expressly rejected Peterson's claim under the contract documents, stating: "Nothing in the documents the parties provided to the Court—the Company's Articles of Organization, Articles of Amendment, Purchase Agreement, Pledge and Security Agreement, or Promissory Note—provide that Mr. Peterson becomes sole manager of the Company upon Defendant's default on the Promissory Note." (Doc. 22, 6:3-6). This action arises out of a contract for purposes of § 12-341.01.

"The legislature intended that the risk of paying the opposing party's attorneys' fees would encourage more careful analysis prior to filing suit." *Chaurasia v. General Motors*

6

3713483.v1

*Corp.*, 212 Ariz. 18, 29, ¶ 43, 126 P.3d 165, 176 (App. 2006) *citing All-Way Leasing, Inc. v. Kelly*, 182 Ariz. 213, 219, 895 P.2d 125, 131 (App. 1994).  Here, Peterson did not conduct a careful pre-suit investigation or analysis regarding the management structure of the Company he claimed to own.  As the Court noted:  "Indeed, in its Motion, Plaintiff fails to address the Company's current manager-managed structure at all, arguing only a likelihood of success on the merits that 'Fyve no longer has any beneficial ownership in the Company' and '[t]he Trust owns 100%.'  (Doc. 2 at 7–8.)."  (Doc. 22, 5:16-19).  In fact, even though the Company's status as a manager-managed LLC was a matter of public record with the Arizona Corporation Commission (Doc. 9-4), and notwithstanding that Fyve repeatedly argued that the manager-managed structure of the Company defeated Peterson's claim that he controlled the management of the entity (Doc. 9, 12:12-28; Doc. 11, 6:19-26), Peterson completely ignored the fact that the Company was a manager-managed entity under its governing organizational documents.  Peterson's inadequate analysis supports Fyve's request for attorneys' fees.

## II. **Fyve Is Entitled to an Award of Attorneys' Fees**

In considering a party's entitlement to an award of attorneys' fees under § 12-341.01(A) and (B), "[t]he trial judge has broad discretion in fixing the amount of the fee provided that 'such award may not exceed the amount paid or agreed to be paid.'"  *Design Trend Int'l Interiors, Ltd. v. Cathay Enter., Inc.,* 103 F.Supp.3d 1051, 1063 (D.Ariz. 2015) (quoting *Associated Indemn. Corp., v. Warner,* 143 Ariz. 567, 570 (1985)).

> Among the factors to consider are (1) the "merits of the claim or defense presented by the unsuccessful party," (2) whether the "litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the result," (3) whether "[a]ssessing fees against the unsuccessful party would cause an extreme hardship," (4) whether the "successful party did not prevail with respect to all of the relief sought," (5) "the novelty of the legal question presented," (6) "whether such claim or defense had previously been adjudicated in this jurisdiction," and (7) "whether the award in any particular case would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney's fees."

7

3713483.v1

*Design Trend,* 103 F.Supp.3d at 1063-64 (quoting *Warner,* 143 Ariz. at 570).

### A.     Peterson's Claims Lacked Merit

The Court found no merit in Peterson's claims to have management control over the Company. As discussed above, the Court found that there was no dispute at the hearing over Peterson's contention that he was the ***owner*** of the membership interest in the Company, and that he failed to demonstrate a likelihood of success on his claim to be the sole ***manager*** of the Company. (Doc. 22, 5:8-19). The Court found nothing in the documents or the law of Arizona or Delaware to support Peterson's claim to be the manager of the Company. (*Id*., 6:3-10). In addition, the Court specifically found that Peterson's claim to be the manager of the Company was contrary to the governing Articles of the Company:

> The most recent Articles of Amendment to the Company's Articles of Organization, dated April 22, 2022, specify that the Company is managed by a group of four managers: Mr. Peterson, Albert Spell, Jeff Bohn, and John Ferron. (10/6/2023 Hr'g Ex. 54.) ***Plaintiff provides no legal support for the proposition that the LLC's Articles of Organization became ineffective upon change of ownership interest, or, here, that Mr. Peterson became the sole manager of the otherwise four-manager-managed Company***. *See, e.g.*, A.R.S. § 29-3201(4); *Ariz. State Dep't of Revenue v. Quality Sanitary & Maint. Supply*, 2007 WL 9898349, at *2 (Ariz. Super. Ct. Jan. 26, 2007) (noting "where the articles of organization so provide (as they do here), management is vested in the named manager or managers, subject to any provisions in the operating agreement limiting the manager's authority").

(*Id.*, 5:20-6:2) (emphasis added).

In short, the Court rejected Peterson's claim for management control over the Company based on the defense arguments raised by Fyve. Fyve's defenses had merit, Peterson's claims did not.

### B.     Fyve's Litigation Efforts Were Necessary to Achieve the Result

As explained in greater detail in the Certification of Counsel attached hereto and the Declaration of Randy Nussbaum attached hereto as *Exhibit 1*, Peterson repeatedly rebuffed Fyve's efforts to resolve the parties' disputes before litigation, before the hearing on 10/6/23, before the Court's ruling in the Order filed 11/3/23, and before filing this Motion. Because of Peterson's obstinance, the litigation could not have been avoided or settled, and

8

3713483.v1

Fyve's litigation efforts were necessary to achieve the result in this case.

### C. Assessing Fees Would Not Cause an Extreme Hardship

Peterson is now the owner of the Company, which he sold to Fyve's predecessor in 2019 for $1.8 million. (Doc. 22, 1:24-27). There is no evidence to support the notion that assessing fees against Peterson would cause him an extreme hardship.

### D. Fyve Prevailed on the Main Relief Sought by Peterson

The Court granted in part and denied in part the Motions for Injunctive Relief filed by both parties. But Fyve completely prevailed on the main issue in this action, which was whether Peterson was entitled to sole management control over the Company. As outlined above, the Court expressly relied on Fyve's arguments in rejecting Peterson's claim to control the Company.

While Fyve initially opposed Peterson's claim of ownership of the Company, the ownership issue was no longer in dispute at the time of the hearing, as the Court recognized. (Doc. 22, 5:8-11). And even though Fyve's Cross-Motion for Injunctive Relief included some imprecise language asking to restore Fyve to "full control" over the Company, the thrust of the Cross-Motion and heart of Fyve's position throughout this case was that Peterson should be enjoined from interfering with the management of the Company as it existed prior to 9/1/23. Fyve's Cross-Motion specifically sought the following relief: "Fyve is restored to full control over DPPM [the Company] and all its business operations and affairs *to the same extent that Fyve exercised control over DPPM prior to September 1, 2023*." (Doc. 9, 15:10-12, emphasis added; *see also id.*, 2:17-19, 12:12-28).

Under the Amended Articles of Organization drafted by Fyve, three of the four managers of the Company were representatives of Fyve, so Fyve effectively was in control of the Company prior to 9/1/23. Consequently, the Court's Order restoring the four managers that were in place prior to 9/1/23 effectively left Fyve in control and thus granted the relief sought by Fyve. Indeed, restoring the status quo of Fyve's management control as it existed prior to 9/1/23 is precisely the relief ordered the Court: "In the absence of a

9

3713483.v1

properly executed amendment to the Articles of Organization, all the Court can require is that the Company continue to operate under the provisions of its applicable organizational and operational documents." (Doc. 22, 6:15-17).

Despite its language of "granting in part and denying in part" the parties' motions, the Court's 11/3/23 Order was a "win" for Fyve.

### E. The Novelty of the Legal Questions Presented

The questions relating to the interpretation of the unique documents in this case and Delaware LLC law were somewhat novel. The remaining issues presented were not particularly novel.

### F. Whether the Claims and Defenses Have Been Previously Adjudicated in This Jurisdiction

Standards for injunctive relief are well-established in this jurisdiction. To Fyve's knowledge, the merits of the claims and defenses in this case have not been previously adjudicated in this jurisdiction.

### G. A Fee Award Would Not Discourage Other Parties from Litigating Legitimate Contract Issues

There is nothing to suggest that a fee award in this case would discourage other parties with tenable claims or defenses from litigating or defending contract issues for dear of incurring liability for substantial amounts of attorneys' fees.

### H. Fyve Is Entitled to Recover Fees Incurred in Preparing this Motion

"Arizona law supports the recovery of attorneys' fees incurred in preparing a fee application." *Gametech Int'l. Inc. v. Trend Gaming Sys., LLC,* 380 F.Supp.2d 1084, 1101 (D.Ariz. 2005) (citing *Schweiger v. China Doll Restaurant, Inc*., 138 Ariz. 183, 188 (App. 1983)). "[I]t takes considerable time in some cases for any 'reasonable and prudent lawyer' to prepare an attorney's fees application which 'militates the burden of the expense of litigation to establish a just claim or just defense' for the prevailing party." *Id.* (citing *Warner,* 143 Ariz. at 569). Thus, "[i]ncluding the reasonable time to prepare an attorney's fees application in an award of attorney's fees to the prevailing party furthers the purpose

10

3713483.v1

of awarding such fees and does not constitute a windfall or double recovery." *Id.*

Fyve should be awarded its attorneys' fees incurred in preparing this motion and in connection with all other briefs and hearings on fee issues.

### III.     The Amount of Fees Requested Is Reasonable

In assessing the "reasonableness" of the amount of attorneys' fees for which an award is requested,

> The beginning point ... is the determination of the actual billing rate which the lawyer charged in the particular matter. . . . Unlike public-rights litigation, and contingent-fee litigation, . . . in corporate and commercial litigation between fee-paying clients, there is no need to determine the reasonable hourly rate prevailing in the community for similar work because the rate charged by the lawyer to the client is the best indication of what is reasonable under the circumstances of the particular case.

*China Doll,* 138 Ariz. at 187-88, *followed in Design Trend,* 103 F.Supp.3d at 1064.

As further explained in the benchmark *China Doll* opinion, the prevailing party is "'entitled to recover a reasonable attorney's fee for every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit' of a successful [outcome]." 138 Ariz. at 188 (quoting *Twin City Sportservice v. Charles O. Finley & Co.*, 676 F.2d 1291, 1313 (9th Cir.), *cert. denied*, 459 U.S. 1009 (1982)).[2]  Moreover, *China Doll* gave particular emphasis to the overall results obtained by the prevailing party, in addressing whether time spent on unsuccessful issues may be compensable:

> [O]ne claim for relief may involve related legal theories.  "Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley v. Eckerhart*, [461 U.S. 424, 435 (1983)].  Thus, where a party has

---

[2]     Attorneys' fees are also recoverable for time spent in "thinking about the case and how what is sought relates to an appropriate theory of defense.  Courts rarely see time entries for thinking about the case, yet every lawyer worth his salt spends time doing that.  Those entries ought not be reduced on the theory that the task described could be done faster without recognizing that more than the precise task listed was involved." *First Interstate Bank of Arizona, N.A. v. Simon*, 159 Ariz. 91, 92 (App. 1988).

11

3713483.v1

accomplished the result sought in the litigation, fees should be awarded for time spent even on unsuccessful legal theories.

*China Doll*, 138 Ariz. at 189, followed in *Orfaly v. Tucson Symphony Society*, 209 Ariz. 260, 266-67, ¶ 24 (App. 2004).  In other words, "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  ***The result is what matters***." *Hensley*, 461 U.S. at 435 (emphasis added).

Under LRCiv 54.2, numerous factors should be addressed in a fee motion regarding the reasonableness of the fees requested.

### A. <u>Time and Labor Required of Counsel</u>

The Declaration of Randy Nussbaum is attached hereto as *Exhibit 1*.  The Fee Agreement between Fyve and Sacks Tierney P.A. (the "Firm") is attached to the Nussbaum Declaration as *Exhibit A*, and Fyve's Itemized Statement of Fees is attached thereto as *Exhibit B*.

Nearly all of the legal services on behalf of Fyve were performed by two Firm attorneys, Randy Nussbaum and Clifford J. Roth.  Mr. Nussbaum was the principal client contact, lead strategist, and advocate at the 10/6/23 hearing, while Mr. Roth did most of the legal research and drafting and much of the preparation for the hearing.  A total of 234.4 hours were spent by four attorneys and two paralegal assistants involved in this case.  As a result of counsel's billing discretion to discount the amount billed to the client, numerous entries were revised to be "No Charge" entries, and the amount of time spent in other entries was reduced.  As a result, the number of hours actually billed and to be billed was reduced by 34.2 hours, from 234.4 hours to 200.2 hours.  Accordingly, the fees billed or to be billed to Fyve were reduced by $15,447.00, from $104,301.50 to $88,854.50, or approximately 14.8%.

The major billable projects included:  (1) opposing Peterson's request for an ex parte TRO; (2) investigating the facts, legal researching and preparing Fyve's Response to Peterson's Motion for Injunctive Relief; (3) legal researching and preparing Fyve's Cross-

12

Motion for Injunctive Relief; (4) negotiating settlement and revising draft settlement agreements that ultimately were unsuccessful; (5) preparing for an evidentiary hearing on the parties' Motions for Injunctive Relief; (6) preparing for oral argument on the parties' Motions for Injunctive Relief; (7) communicating with clients and others; (8) analyzing the impact of the Court's 11/3/23 Order and strategy in light of that Order; and (9) legal researching and preparing this Motion for Fees.

### B.   Novelty and Difficulty of the Questions Presented

As noted above, some of the legal issues in this case were novel.  Most of the issues presented in this case required knowledge and expertise regarding the law of secured transactions and Arizona and Delaware law regarding limited liability companies.

### C.   Skill Required to Perform the Legal Services Properly

The successful litigation of this case on behalf of Fyve required strategic planning and coordination, diligence, creative thinking, research and analysis of secured transactions and limited liability company issues, and litigation expertise in handling TROs and preliminary injunctions in federal court.  As discussed in the Nussbaum Declaration, Fyve's attorneys were well-suited to perform these legal services.

### D.   Preclusion of Other Employment by Counsel

Sacks Tierney lawyers are highly regarded in the field of commercial litigation.  The attorneys involved in this action were required to schedule around other client matters and the time devoted to this case represented billable hours that could not be devoted to other matters.

### E.   Customary Fees Charged in Matters of this Type

While the amount of time billed was discounted as noted above, Fyve was charged the normal and customary hourly rates of $575 for Mr. Nussbaum and $415 for Mr. Roth.

### F.   Whether the Contracted Fee Was Fixed or Contingent

The attorneys' fees billed in this case were based on fixed hourly rates.

### G.   Time Limitations Imposed by the Client or Circumstances

Peterson's request for an ex parte TRO and his failure to timely serve the Court's

13

3713483.v1

9/7/23 Order denying ex parte relief required counsel to urgently research and prepare Fyve's 9/8/23 Response to Plaintiff's Request for Temporary Restraining Order Without an Opportunity to Be Heard.  Otherwise, there were no particular time limitations imposed in this case.

### H. The Value of the Rights Involved and the Results Obtained

While no damages were sought in this case, the management control of the Company was important to both sides and could have a significant impact on the client, vendor and employee relationships of the Company, and therefore have a significant impact on the value of the Company.  Both parties agreed that irreparable harm would be suffered in the absence of a Court Order, and the Court recognized that "the parties seem to be in desperate need of resolution of a dispute between them that has become personal."  (Doc. 22, 6:13-14).  Fyve obtained the result is sought in this case – an injunction without bond restoring the management of the Company as it existed before Peterson attempted to seize unilateral control on 9/1/23.

### I. The Experience, Reputation and Ability of Counsel

These issues are addressed in the Nussbaum Declaration, but the two main attorneys for Fyve have more than 86 combined years of litigation experience (both admitted in 1980).

### J. The "Undesirability" of the Case

There were no aspects of this case that could be described as "undesirable."

### K. The Nature and Length of the Attorney-Client Relationship

Fyve retained the Firm to represent it in this matter in early September 2023.  No professional relationship existed between Fyve and the Firm prior to that time.

### L. Fee Awards in Similar Actions

Fyve is unaware of any other actions like this one, or any fee awards in any such actions.

### M. Other Matters

Aside from the matters in this Motion and the exhibits hereto, Fyve is not aware of

14

3713483.v1

any other matters that should be considered by the Court in assessing the reasonableness of the fees requested.

## IV. Conclusion

Based on the arguments presented by Fyve, the Court rejected Peterson's claim for an injunction granting him complete control over the Company and instead granted Fyve's request for an injunction restoring the management of the Company as it existed prior to 9/1/23. Fyve is the successful party under § 12-341.01 and the Court should exercise its discretion under that statute to award reasonable attorneys' fees to Fyve in the amount of $88,854.50, plus any additional future amounts incurred in briefing and arguing attorneys' fees issues.

RESPECTFULLY SUBMITTED this 11th day of December, 2023.

                SACKS TIERNEY P.A.

                By: */s/ Clifford J. Roth*
                     Randy Nussbaum
                     Clifford J. Roth
                     Attorneys for Defendant Fyve, Inc.

3713483.v1

# CERTIFICATION OF COUNSEL

1. Pursuant to LRCiv 54.2, I hereby certify as follows.

2. On December 8, 2023:

    A. At about 2:38 p.m., I left a voicemail message for Sean A. Woods, one of the attorneys for Plaintiff Dan Peterson, as Trustee of the Dan D. Peterson Living Trust dated April 2, 2009 ("Peterson"), asking him to call me to discuss payment of the attorneys' fees of Defendant Fyve, Inc. ("Fyve").

    B. At about 2:45 p.m., I sent a follow-up email to Mr. Woods and his partner, Robert T. Mills, asking them to call me at their earliest convenience to discuss whether Peterson will agree to pay Fyve's attorneys' fees.

    C. At about 2:55 p.m., Mr. Mills sent me an email response stating: "No. Will Fyve agree to pay my client's attorneys fees?"

    D. At about 3:10 p.m., I sent another email to Mr. Mills stating that I would like to discuss the attorneys' fees issues with him and asking what number I should call.

    E. At about 3:14 p.m., Mr. Mills sent me an email with his telephone number.

    F. At about 3:22 p.m., I telephoned and personally consulted with Mr. Mills about payment of Fyve's attorneys' fees. I asked whether Peterson would agree to pay anything to Fyve for attorneys' fees and he responded that he was sure that Peterson would not. I then asked about whether Peterson would agree that each party bear its own attorneys' fees, which would be a "walk away" on attorneys' fees. I told him that I did not have authority to offer such a "walk away" agreement and had not even discussed that issue with our client. I said that if his client was interested in such an agreement, I would discuss it with our client. Mr. Mills said that he could almost guarantee that Peterson's answer would be no, but that he would check with Peterson and let me know.

/ / / /

16

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

3713483.v1

3. On Sunday, December 10, 2023, at about 1:45 p.m., Mr. Mills sent me an email stating: "My client does not agree to pay Fyve's attorney fees or to a 'walk away' on attorneys fees."

4. A copy of the email exchange between Mr. Mills and me on December 8, 2023 and December 10, 2023 is attached to Fyve's Motion for Attorneys' Fees as *Exhibit 2*.

5. Despite personal consultation and good faith efforts, the parties have not been able to satisfactorily resolve all disputed issues relating to Fyve's attorneys' fees in this case.

DATED this 11th day of December, 2023.

        */s/ Clifford J. Roth*   .
        Clifford J. Roth

17

3713483.v1

CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2023, I electronically transmitted the foregoing Defendant's Motion for Award of Attorneys' Fees to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

>Robert T. Mills, Esq.
>Sean A. Woods, Esq.
>Mills + Woods Law, PLLC
>5055 North 12th Street, Suite 100
>Phoenix, Arizona 85014
>*Attorneys for Plaintiff*

/s/ Brittany Crane

18

3713483.v1